**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INFORMED CONSENT ACTION NETWORK, <br><br> *Plaintiff,* <br><br> v. <br><br> CENTERS FOR DISEASE CONTROL AND PREVENTION, *et al.*, <br><br> *Defendants.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 23-747 TSC <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DECLARATION OF ROGER ANDOH**

I, Roger Andoh, declare the following to be true and correct:

1. I am the Freedom of Information Act (FOIA) Officer for the Centers for Disease Control and Prevention (CDC), an organization within HHS. The CDC-FOIA is the central office responsible for responding to requests for information under the Freedom of Information Act. As the FOIA officer, I supervise and direct the day-to-day activities of the CDC/ATSDR Office.

2. I offer the following statement based upon information available to me in my official capacity, including the administrative appeal files maintained by my office pertaining to Mr. Siri's FOIA requests, as well as information provided to me by CDC staff. The purpose of this statement is to explain the search the FOIA Office conducted for records responsive to the FOIA request at issue here, and to explain the basis for my determination that certain information should be withheld pursuant to FOIA's Exemption 5 and 6 U.S.C. § 552 5 U.S.C. (b)(5), and (6), and cannot be reasonably segregated. and to set forth the Department's response to the FOIA requests that are the subject of Mr. Siri's Complaint in this case.

3. On June 30, 2022, the Centers for Disease Control and Prevention and Agency for Toxic Substances and Disease Registry (CDC) received a Freedom of Information Act (FOIA)

Case 1:23-cv-00747-TSC   Filed 3/21/23.

request from Aaron Siri (Siri & Glimstad). The request was assigned #22-01788-FOIA. In relevant part, Mr. Aaron Siri, asked for:

> "All records related to Proportional Reporting Ratio (PRR) analyses performed "to identify AEs that are disproportionately reported relative to other AEs" pursuant to Sections 2.0, 2.3., and 2.3.1 of the VAERS Standard Operating Procedures for COVID-19. This should include, but not be limited to, all communications concerning PRR analyses including communications concerning any decision to not conduct PRR analyses.
>
> Information helpful to fulfilling the request: The CDC's Immunization Safety Office is the likely custodian of responsive records." The document attached as Exhibit 1 is a true and correct copy of that request.

4. On July 6, 2022, I sent Plaintiff a letter that acknowledged the FOIA's Office's receipt of Plaintiff's FOIA request and assigned it request number #22-01788-FOIA. I also informed Plaintiff that the FOIA Office would be unable to issue a final determination within 20 days of receiving the FOIA request, see 5 U.S.C. § 552(a)(6)(A)(i), and invited Plaintiff to narrow the scope of the request to limit the volume of potentially responsive records. The document attached as Exhibit 2 is a true and correct copy of that letter.

5. On July 6, 2022, the CDC FOIA analyst sent a request for documents to the National Center for Emerging and Zoonotic Infectious Diseases (NCEZID/ISO), Immunization Safety Office. This office was the reasonably likely location of the records sought and identified in Mr. Siri's request. The NCEZID/ISO program informed the FOIA office that no search had been conducted, instead they provided an explanation that was conveyed to the requester in the final response.

6. On July 29, 2022, CDC issued its final response to Mr. Siri in which indicated that *"a search of records failed to reveal any documents pertaining to your request."* In addition, the CDC conveyed the NCEZID/ISO's detailed clarification regarding the records sought by Mr. Siri. The document attached as Exhibit 3 is a true and correct copy of that letter.

7. On October 7, 2022, Mr. Siri submitted an administrative appeal to HHS challenging the CDC's search for request #22-01788-FOIA. The appeal was assigned tracking number 2023-

00012-A-PHS by HHS. In his appeal letter, Mr. Siri stated: "CDC has failed to conduct an adequate search of the requested records."

8. On February 17, 2023, the CDC's National Center for Emerging and Zoonotic Infectious Diseases (NCEZID) Office conducted a search which resulted in the production of 51 Excel spreadsheets. The CDC's NCEZID explained that these tables/results were generated from data stored on VAERS CDC managed servers. No search was conducted for "all communications concerning PRR analyses including communications concerning any decision to not conduct PRR analyses."

9. On August 10, 2023, the NCEZID/ISO office provided a rationale for their decision not to conduct a search for all communications pertaining to PRR analyses. The NCEZID/ISO subject-matter expert explained:

> "For clarification, no search was conducted for any communications concerning PRR analyses including communications concerning any decision to not conduct PRR analyses. ISO Leadership explained that Empirical Bayesian (EB) data mining has been the acknowledged "gold standard" of detecting disproportionality for pharmacovigilance, which predates COVID-19. No formal decision-making process was involved to use EB data mining for COVID-19 vaccines. Therefore, no responsive documents exist. The use of PRR was included in the VAERS SOP to provide a quick, crude means of detecting disproportionality as desired, to corroborate EB data mining findings. PRR was never intended to serve as the primary means of detecting disproportionality in VAERS."

10. On March 07, 2023, the FOIA analyst asked the CDC IT Team to conduct an additional search for *"all communications concerning PRR analyses including communications concerning any decision to not conduct PRR analyses."* The CDC FOIA IT Team used the Microsoft Office 365 eDiscovery tool and the criteria below to access the email mailboxes of the custodians identified by the requester. The CDC IT Team performed a search using the following search criteria:

<u>Search Terms:</u> Proportional Reporting Ratio (PRR) & Adverse Events (AEs); PRR and AEs.

<u>Custodians:</u>
- Shimabukuro, Tom ISO Director

Case 1:23-cv-00747-TSC   Filed 3/21/23.

- Su, John ISO Deputy Director
- Moro, Pedro Acting Team Lead
- Gallego, Ruth Nurse Consultant
- Licata, Charles Epidemiologist
- Marquez, Paige Statistician
- Miller, Elaine Epidemiologist
- Roberts, Traci Public Health Analyst
- Romanson, Brittney Health Scientist
- Suragh, Tiffany Health Scientist
- Zhang, Tony Data Analyst
- Martha Sharan-Health Comm. Specialist

Date range: 1/1/2022-7/31/2022

11. On March 20, 2023, the FOIA IT Technician informed the FOIA Analyst that the search for records identified documents that matched the search terms provided by the requester.

12. On April 3, 2023, the FOIA analyst sent a final response letter and documents to HHS for direct response to the requester. The letter stated that the agency had located 18 pages of responsive records (five pages released in full; thirteen pages disclosed in part); and 51 Excel spreadsheets containing PRR results generated from analysis of data from March 25, 2022, through July 31, 2022 (no redactions have been applied to the tables).

13. On January 17, 2024, the FOIA analyst asked the CDC IT Team to conduct a new search for *"all communications concerning PRR analyses including communications concerning any decision to not conduct PRR analyses."* The CDC IT Team performed a search using the following search criteria:

**Search Terms:** Proportional Reporting Ratio (PRR) & Adverse Events (AEs); PRR and AEs.

Custodians:
- Dr. Rochelle Walensky, CDC Director
- Ann, House
- Davis Shay

14. On January 19, 2024, the CDC IT Team successfully performed another detailed and comprehensive enterprise search of all records pertaining to PRR & Adverse Events (AEs), which yielded a total of 25 pages of responsive records. The new search was conducted to gather any relevant data or documents that may have been overlooked in previous searches, and to include all individuals who had direct involvement in the Immunization Safety Team responsible for conducting statistical analysis or have been engaged in communications with the program regarding PRR analysis. Also, Plaintiff played a role in adding these additional custodians. This included the following custodians:

- Dr. Rochelle Walensky, CDC Director
- Ann, House
- Davis Shay

This search essentially produced the same records ie, same email chains, but with minor additions i.e., an additional comment to an email and tables. Notwithstanding the fact that Plaintiff's suggestion of additional custodians did not improve the search results, Defendants has interpreted that Plaintiff's involvement in re-tooling the search means that Plaintiff will no longer be challenging the adequacy of Defendants' search. The parties have filed several Joint Status Reports to that effect

15. On February 6, 2024, CDC FOIA produced the above 25 pages combined with the previously released pages to Plaintiff.

16. On March 12, 2024, CDC FOIA asked the program office to conduct a manual search. They manually searched for all records related to PRR, Proportional Report Ratio, pursuant to the VAERS SOP for Covid-19 from January 1, 2021 on. This included the following custodians:

- John Su
- Pedro Moro, VAERS Deputy Team Lead
- Paige Marquez, VAERS Statistician

Case 1:23-cv-00747-TSC   Filed 3/21/23.

- Tony Zhang, VAERS Data Analyst

17. On May 10, 2024, CDC FOIA released 341 pages and 7 excel spreadsheets that were discovered during the manual search. Plaintiff objected to all redactions listed below.

## WITHHOLDINGS

18. On July 26, 2024, CDC FOIA provided a draft *Vaughn* Index of the redactions that remain at issue in this litigation. The draft *Vaughn* Index covers the 341 pages and 7 excel spreadsheets released on May 10, 2024. The exemptions at issue are 5 U.S.C. § 552(b)(4), 5 U.S.C. § 552(b)(5); and 5 U.S.C. § 552(b)(6).

19. Plaintiff responded to the draft *Vaughn* Index in September 2024, lifting some of their objections.

**Exemption (b)(5) Records**

20. 5 U.S.C. § 552(b)(5) **(Exemption 5)** exempts from disclosure: "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  The exemption applies to documents that are normally privileged in the civil litigation context.  Consequently, Exemption 5 permits the withholding of all or portions of any documents that are subject to the attorney-client privilege, the attorney work-product privilege, or the deliberative process privilege.  In this case, the deliberative process privilege was invoked.

21. The deliberative process privilege protects internal communications that are pre-decisional and contain staff advice, opinions, and recommendations, which are part of a federal agency's deliberative decision-making process.  All of the records withheld in part pursuant to Exemption 5 constitute internal CDC emails, which have not been shared outside of CDC. They therefore satisfy Exemption 5's inter-/intra-agency record threshold requirement.

22. The deliberative process privilege encompassed by Exemption 5 of the FOIA shields records and information that are both predecisional and deliberative. The information withheld pursuant to Exemption 5 satisfy both criteria.

23. Here, FOIA Exemption (b)(5) was applied to protect pre-decisional, deliberative communications among agency staff regarding analysis and planning how to run and what should be included in the PRR tables.

24. Specifically, and identified in the attached *Vaughn* index, FOIA Exemption (b)(5) and the deliberative privilege was applied to portions of twenty-one emails and to five excel tables.

*Exemption 5 withholding from Email 1[1], Email 2, Email 3, Email 6, Email 7, Email 17, and Email 19:*

25. Email 1 (pages 1-7), Email 2 (pages 8-15), Email 3 (pages 16-23), Email 6 (pages 66-81), Email 7 (pages 82-84), Email 17 (pages 243-258), and Email 19 (pages 260-263) contain discussions between February 23, 2022 and March 3, 2022, between CDC Vaccine Safety subject matter experts concerning Proportional Reporting Ration (PRR) Output.

26. Within these pages are redacted portions of information that consist of pre-decisional, deliberative discussions among CDC subject-matter experts Bicheng Zhang, MS (Statistician), Paige Marquez, MSPH (Statistician), John Su, MD (Deputy Director), and Pedro Moro, MD, MPH, (Acting Team Lead). The discussions pertain to the preliminary findings of the PRR statistical analysis and reflect the deliberative process agency subject-matter experts used to finalize the specific items to be included within the tables that were most relevant and beneficial for use by relevant people at the agency. There are concerns that providing preliminary versions of the tables could lead to confusion amongst differences in how items were listed or defined in the final versions of the tables or fallacies in comparing the preliminary tables with the final versions used for internal analysis. The relevant time periods included within these preliminary tables was included in subsequent final versions of the table. These preliminary findings are the result of an ongoing process of revisions and consultations and represent the exchange of ideas and viewpoints among subject-matter experts whose expertise and judgment are believed to be relevant. The information discussed and presented in the form of tables was intended for internal deliberative use and does not constitute the results that would be shared internally within the agency.

---

[1] For ease of reference email 1 pertains to the first row in the May 10, 2024 production table in the attached *Vaughn* Index, email 2 pertains to the second row in the attached *Vaughn* Index and so forth.

27. The release of this information would compromise the deliberative process of the agency requiring open, frank discussions on decision-making among subject-matter experts concerning PRR statistical approaches. The result would be a chilling effect on intra- and interagency communications and reduce the ability of agency officials to deliberate in a meaningful manner during a public health emergency. The resulting confusion and misunderstanding would lead to loss of trust and credibility in CDC's initiatives, and degradation of CDC's ability to protect and promote the health of the nation.

28. The redacted material also contains questions, comments, and proposed changes.

29. The attachments (pages 67-81, and 244-248) contain preliminary versions of a COVID-19 PRR Table. These preliminary tables include various iterations of table layout (e.g., column order, field sorting), how certain items were displayed, how often tables were to be ran, and how the multiple tables were organized when compiled. The final versions of these tables were previously released to ICAN and Epoch Times through a Freedom of Information Act (FOIA) request, and Epoch Times subsequently disseminated them to the general public.  Relevant data used to develop these preliminary data tables were also included in the subsequent final tables. Also, the information discussed and presented in the form of a table does not constitute the results the agency intended to publish or disclose to the public.  The resulting public confusion over the contents of the final PRR tables, and differences between the preliminary and final PRR tables, will result in eroded trust in CDC and the degradation of its ability to protect and promote the health of the nation.

30. The withheld material is predecisional because it predates any agency final decision or output.

31. The withheld material is deliberative because it consists of deliberations and preliminary thoughts of CDC employees on matters relating to the data analysis, interpretation, and to the exchange of information and ideas related to the analysis of data from the agency's internal data systems. Release would compromise the deliberative process of the agency in administrative matters as it would reveal internal deliberations and preliminary thoughts on the matter, including the exchange of ideas, language choices, and opinions offered by ISO leadership.  Disclosing such thought processes and communications would inhibit open and frank discussions between CDC employees on matters related to COVID-19 statistical analyses and internal processes. This would result in a chilling effect on intra- and inter-agency

communications on critical matters related to how CDC better assess health risks associated with a vaccine and reduce the ability of agency officials to deliberate in a meaningful manner during an ongoing public health emergency.

32. Release would also cause harm by providing the public with incomplete, preliminary, or confusing information on a sensitive matter that this deliberative process is designed to avoid. The resulting confusion and misunderstanding would lead to loss of trust and credibility in CDC's initiatives, and its ability to protect and promote the health of the nation. Further, release of deliberative and preliminary communications would lead to public confusion over the contents of the final PRR tables, including why specific data were or were not included. The end result will be eroded trust in CDC and the degradation of its ability to protect and promote the health of the nation.

*Exemption 5 withholding from Email 4, Email 20, and Email 21:*

33. Email 4 (pages 24-59), Email 20 (pages 271-304) and Email 21 (pages 305-340) contain discussions between April 8 and April 20, 2022, between CDC Vaccine Safety subject matter experts concerning Table 5 COVID 19 Weekly.

34. The withheld material consists of internal hyperlinks and deliberative discussions between CDC staff concerning the creation of SAS Proportional Reporting Ratio (PRR) analysis or PRR outputs. Release of the hyperlinks would allow unauthorized access of CDC draft documents, as well as any other documentation, in those drives.

35. In addition, within these pages are redacted portions of information that consist of pre-decisional, deliberative discussions among CDC subject-matter experts concerning preliminary statistical analysis and the process by which agency subject-matter experts may generate and compare their analytical findings prior to publication.

36. The redacted attachments consist of two different copies of Table 5 containing preliminary COVID-19 PRR results. These two preliminary tables were created and shared among the two statisticians or subject-matter experts with the purpose of comparing the proportion of a specific adverse event. These preliminary tables include various iterations of table layout (e.g., column order, field sorting), how certain items were displayed, how often tables were to be ran, and how the multiple tables were organized when compiled. The final versions of these tables were previously released to ICAN and Epoch Times through a Freedom of Information Act

Case 1:23-cv-00747-TSC   Filed 3/21/23.

(FOIA) request, and Epoch Times subsequently disseminated them to the general public. Relevant data used to develop these preliminary data tables were also included in the subsequent final tables. Release of these attached tables would cause harm, confusion, and misinterpretation, as the results were preliminary, and the formatting would differ from the final tables (i.e., data located in one field of the preliminary tables would be found in a different location of the final tables). Also, the information discussed and presented in the form of a table does not constitute the results the agency intended to publish or disclose to the public. The resulting public confusion over the contents of the final PRR tables, and differences between the preliminary and final PRR tables, will result in eroded trust in CDC and the degradation of its ability to protect and promote the health of the nation.

37. The withheld material is predecisional because it predates any agency final decision or output.

38. The withheld material is deliberative because it consists of deliberations and preliminary thoughts of CDC employees on matters relating to the data analysis, interpretation, and to the exchange of information and ideas related to the analysis of data from the agency's internal data systems. Release would compromise the deliberative process of the agency in administrative matters as it would reveal internal deliberations and preliminary thoughts on the matter, including the exchange of ideas, language choices, and opinions offered by ISO leadership. Disclosing such thought processes and communications would inhibit open and frank discussions between CDC employees on matters related to COVID-19 statistical analyses and internal processes. This would result in a chilling effect on intra- and inter-agency communications on critical matters related to how CDC better assess health risks associated with a vaccine and reduce the ability of agency officials to deliberate in a meaningful manner during an ongoing public health emergency.

39. Release would also cause harm by providing the public with incomplete, preliminary, or confusing information on a sensitive matter that this deliberative process is designed to avoid. The resulting confusion and misunderstanding would lead to loss of trust and credibility in CDC's initiatives, and its ability to protect and promote the health of the nation. Further, release of deliberative and preliminary communications would lead to public confusion over the contents of the final PRR tables, including why specific data were or were not included.

Case 1:23-cv-00747-TSC

The end result will be eroded trust in CDC and the degradation of its ability to protect and promote the health of the nation.

*Exemption 5 withholding from Email 5:*

40. Email 5 (pages 64-65) contains email discussions on May 13, 2021, between CDC Vaccine Safety subject matter experts concerning PRR for myocarditis.

41. Redacted portions consist of pre-decisional, deliberative discussions among CDC subject-matter experts concerning preliminary statistical analysis and how CDC subject-matter experts may generate and compare the analytic findings prior to publication. The redacted material also includes questions, comments, and proposed analysis.

42. The withheld material is predecisional because it predates any agency final decision or output.

43. The withheld material is deliberative because it consists of pre-decisional, deliberative discussions and thoughts on the matter, including the exchange of ideas, language choices, and opinions offered by ISO leadership.

44. Release would cause harm by providing the public with incomplete, preliminary, or confusing information on a sensitive matter that this deliberative process is designed to avoid. These negative outcomes would result in a chilling effect on intra- and inter-agency communications on matters regarding the use of CDC statistical analysis techniques and reduce the ability of agency officials to deliberate in a meaningful manner during an ongoing public health emergency. Further, the resulting confusion and misunderstanding would lead to loss of trust and credibility in CDC's initiatives, and its ability to protect and promote the health of the nation.

45. Additionally, release of deliberative and preliminary communications would lead to public confusion over the contents of the final PRR tables, including why specific data were or were not included. The end result will be eroded trust in CDC and the degradation of its ability to protect and promote the health of the nation.

*Exemption 5 withholding from Email 8 and Email 13:*

46. Email 8 (page 85) and Email 13 (page 180) contain emails on July 22, 2022, between CDC Vaccine Safety subject matter experts concerning discontinuing COVID-19 automated tables.

47. Redacted portions consist of pre-decisional, deliberative discussions among CDC subject-matter experts concerning generating PRR outputs on a specific age group. The redacted material includes deliberative discussions concerning how CDC subject-matter experts may generate and compare their analytic findings. The redacted material includes comments and the proposed statistical approach.

48. The withheld material is predecisional because it predates any agency final decision or output.

49. The withheld material is deliberative because it consists of pre-decisional, deliberative discussions and thoughts on the matter, including the exchange of ideas, language choices, and opinions offered by ISO leadership.

50. Release would cause harm by providing the public with incomplete, preliminary, or confusing information on a sensitive matter that this deliberative process is designed to avoid. These negative outcomes would result in a chilling effect on intra- and inter-agency communications on matters regarding the use of CDC analytic techniques and reduce the ability of agency officials to deliberate in a meaningful manner during an ongoing public health emergency. Further, the resulting confusion and misunderstanding would lead to loss of trust and credibility in CDC's initiatives, and its ability to protect and promote the health of the nation.

51. Additionally, release of deliberative and preliminary communications would lead to public confusion over the contents of the final PRR tables, including why specific data were or were not included. The end result will be eroded trust in CDC and the degradation of its ability to protect and promote the health of the nation.

*Exemption 5 withholding from Email 9*

52. Email 9 (page 154-157) contains emails between May 13 through May 18, 2022, between CDC Vaccine Safety subject matter experts concerning re: Questions on Pulmonary Embolism.

53. The withheld material consists of internal hyperlinks that leads subject-matter experts to internal CDC shared drives. These share drives house files that provide access to internal data and preliminary COVID-19 statistical tables. Release of the hyperlinks might allow an outsider to access the CDC draft documents in those drives.

54. The redactions also contain communications regarding whether the CDC was monitoring signals for Pulmonary embolism. This example illustrates the confusion that would result

should this information be released publicly: PRRs do not prespecify outcomes for which to search (something not understood in this email exchange).

55. The withheld material is predecisional because it predates any agency final decision or output.

56. The withheld material is deliberative because it consists of pre-decisional, deliberative communications about CDC monitoring policy.

57. Release would also cause harm by providing the public with incomplete, preliminary, or confusing information on a sensitive matter that this deliberative process is designed to avoid. These negative outcomes would result in a chilling effect on intra- and inter-agency communications on matters regarding the use of CDC statistical analysis techniques and reduce the ability of agency officials to deliberate in a meaningful manner during an ongoing public health emergency. Further, the resulting confusion and misunderstanding would lead to loss of trust and credibility in CDC's initiatives, and its ability to protect and promote the health of the nation.

58. Additionally, release of deliberative and preliminary communications would lead to public confusion over the over the role of the PRR tables, including why specific data were or were not included. The end result will be eroded trust in CDC and the degradation of its ability to protect and promote the health of the nation.

*Exemption 5 withholding from Email 10, Email 11, and Email 12:*

59. Email 10 (page 158-166), Email 11 (page 167-172), and Email 12 (page 173-179) contain emails between June 22 through June 23, 2022, between CDC Vaccine Safety subject matter experts and Senior health Communications Specialist concerning a Reporter inquiry.

60. The redaction portions contained on pages 158-161, 162-166, 167-172, and 173-179 consist of pre-decisional and deliberative discussions on a response to an inquiry from the associated press. Redacted material contains pre-decisional and deliberative discussions regarding the recommended response to a FOIA inquiry submitted by a reporter. The Vaccine Safety Team Lead provided feedback and clarification regarding the statement previously provided by a staff member and explained to the Health Communications Specialist the exploratory work that was taking place at the time regarding the statistical analyses and the proportional reporting ratio. The language provided by the vaccine safety subject matter experts went through additional

Case 1:23-cv-00747-TSC   Filed 3/21/23.

discussions with Communications staff, leading to additional edits and internal review. Communications staff provided final versions of statements to respond to the Reporter's inquiry.

61. The withheld material is predecisional because it predates any agency final decision or response to the Associated Press.

62. The withheld material is deliberative because it consists of pre-decisional, deliberative communications about how to respond to an Associated Press inquiry.

63. Release of this information would reveal the internal deliberations and preliminary thoughts of CDC staff on matters pertaining to the draft statistical analyses of proportional reporting ratios. The draft analyses were shared with the health communications specialist in order to help explain the challenges the team encountered during this process.

64. Release would cause harm by providing the public with incomplete, preliminary, or confusing information on a sensitive matter that this deliberative process is designed to avoid. These negative outcomes would result in a chilling effect on intra- and inter-agency communications on matters regarding the use of CDC statistical analysis techniques and reduce the ability of agency officials to deliberate in a meaningful manner during an ongoing public health emergency. Further, the resulting confusion and misunderstanding would lead to loss of trust and credibility in CDC's initiatives, and its ability to protect and promote the health of the nation.

*Exemption 5 withholding from Email 14 and Email 18:*

65. Email 14 (page 181) and Email 18 (page 259) contain an email on February 13, 2022, between CDC Vaccine Safety subject matter experts concerning PRR for booster doses. The email contains preliminary thoughts and questions on how to use available VAERS data to write a short paper on the safety of booster doses in pregnant women.

66. The redacted material consists of pre-decisional and deliberative thoughts from CDC subject-matter expert to CDC statistician regarding proposed PRR analyses for a short paper. This deliberation explored different analytic approaches, including different ways of performing PRR analysis.

Case 1:23-cv-00747-TSC

67. The withheld material is predecisional because it predates any agency final decision or use of any type of data in formulating a short paper.

68. The withheld material is deliberative because it consists of primary thoughts or concerns on using particular data for a short paper. The release of this information would compromise the deliberative process of the agency in administrative matters requiring open, frank discussions on decision-making and policy between staff members. Here a staff member is contemplating the best way to begin writing a paper on boosters in pregnant women, the deliberative choices on how to use the data available to him through VAERS to adequately and consistently relay the information to the public.

69. The result would be a chilling effect on intra- and interagency communications that reduces the ability of agency officials to deliberate in a meaningful manner on comprehensive policy planning during a public health emergency. The resulting confusion and misunderstanding would lead to loss of trust and credibility in CDC's initiatives, and degradation of CDC's ability to protect and promote the health of the nation.

*Exemption 5 withholding from Email 15 and Email 16:*

70. Email 15 (page 182-183) and Email 16 (page 184-186) contain an email discussion between April 26 to April 27, 2022, between CDC Vaccine Safety subject matter experts concerning the Composite Report Working Group.

71. The redacted material consists of pre-decisional and deliberative discussions between CDC subject-matter experts regarding topics for discussion during a forthcoming meeting, including technical problems with the reporting system. These discussions included exploratory discussions of ideas, some of which were not pursued.

72. The withheld material is predecisional because it predates any agency final decision or communications regarding the Composite Report Working Group.

73. Release would compromise the deliberative process of the agency in administrative matters, as it would reveal internal deliberations and preliminary thoughts on the matter. Release would cause harm by exposing internal processes and matters. Release would cause harm by providing the public with incomplete, preliminary, or confusing information on a sensitive matter that this deliberative process is designed to avoid. These negative outcomes would result in a chilling effect on intra- and inter-agency communication on matters regarding the safety

and monitoring of internal systems and reduce the ability of agency officials to deliberate in a meaningful manner during an ongoing public health emergency. Further, the resulting confusion and misunderstanding would lead to loss of trust and credibility in CDC's initiatives, and its ability to protect and promote the health of the nation.

74. Release of this information would reveal the limitations of ISO's safety systems and how they impacted safety monitoring, compromising CDC's ability to fulfill its mission by not only undermining trust in CDC integrity, but also enabling the targeting and exploitation of CDC's technical vulnerabilities.

*Exemption 5 withholding from Email 24:*

75. Email 24 (page 270) contains an email on March 24, 2022, between CDC Vaccine Safety subject matter experts concerning New COVID-19 weekly tables.

76. The only redaction consists of an internal hyperlink that directs subject-matter experts to internal CDC shared drives. The share drive contains files that grant access to internal data and preliminary COVID-19 statistical tables.

77. Release of the hyperlinks might allow an outsider to access the CDC draft documents in those drives. Disclosing this link would allow external users to navigate and access the agency's site where confidential and personally identifiable information is stored. Release of this material would result in a chilling effect on agency communications and hinder the ability of agency officials to deliberate in a candid and meaningful manner when addressing public health events and conducting public health surveillance. Further, disclosure of this link and subsequent release of confidential information would erode trust in CDC, with subsequent reluctance to share personal information as part of vaccine safety surveillance (such as reporting to the Vaccine Adverse Event Reporting System), drastically compromising the nation's key early warning system for potential vaccine safety concerns. This outcome would degrade CDC's ability to protect and promote the health of the nation.

*Exemption 5 withholding on Excel Worksheets*

78. Seven Excel sheets were produced to the plaintiff. They consist of: (1) Table 5 PRR of PTs for COVID19 mRNA Compared to 2009-2022 NON-COVID-19; (2) Table X PRR of PTs for Covid19 Compared to 2009_2022 NON_Covid19; (3) Table X PRR of PTs for COVID19

Case 1:23-cv-00747-TSC

Moderna Compared to Pfizer; (4) Table X PRR of PTs for COVID19 mRNA Compared to 2009-2022 NON-COVID-19; (5) Table X PRR of PTs for COVID19 Pfizer Compared to Moderna (Released in Full); (6) PRR of Pts for 5-11 COVID19 Pfizer Compared to 2009_2022; and, (7) PRR of PTs for 5-11 COVID-19 Pfizer Compared to 2009-2022 5-11 FLU_0-21 Days to Onset.

79. Tables 4 and 5 were released in full. The redacted portions consists of preliminary versions of Table 5 PRR of PTs for COVID19 MRNA compared to 2009-2022, and early versions of the Table X PRR COVID-19 Moderna compared to Pfizer and NON-COVID19.

80. These preliminary tables include various iterations of table layout (e.g., column order, field sorting), how certain items were displayed, how often tables were to be ran, and how the multiple tables were organized when compiled. The final versions of these tables were previously released to ICAN and Epoch Times through a Freedom of Information Act (FOIA) request, and Epoch Times subsequently disseminated them to the general public. Relevant data used to develop these preliminary data tables were also included in the subsequent final tables.

81. Release of this information would cause harm, confusion, and misinterpretation, as the results were preliminary, and the formatting would differ from the final tables (i.e., data located in one field of the preliminary tables would be found in a different location of the final tables). Also, the information discussed and presented in the form of a table does not constitute the results the agency intended to publish or disclose to the public. The resulting public confusion over the contents of the final PRR tables, and differences between the preliminary and final PRR tables, will result in eroded trust in CDC and the degradation of its ability to protect and promote the health of the nation.

**Segrebility**

82. For each document that was withheld or redacted, a line-by-line review was completed to determine whether any portions of the documents could be released. CDC has released all non-exempt material, unless the material is inextricably intertwined with exempt material.

83. For each document that was withheld in its entirety, it was determined that there was no reasonably segregable, non-exempt information in this document, because any non-exempt information would leave only meaningless words and phrases.

Case 1:23-cv-00747-TSC   Filed 3/21/23.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 30th day of October 2024.

*Roger Andoh*
_____
Roger Andoh
Freedom of Information Act Officer
Centers for Disease Control and Prevention
Agency for Toxic Substances and Disease Registry
United States Department of Health and Human Services