**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

INFORMED CONSENT ACTION NETWORK,

                        Plaintiff,

         v.

CENTERS FOR DISEASE CONTROL and U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,

                        Defendants.

Civil Action No. 23-cv-00747-TSC

**PLAINTIFF'S COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 4

LEGAL STANDARD ........................................................................................................... 7

ARGUMENT ........................................................................................................................ 8

I.   Exemption 5 ..................................................................................................................... 9

    A.   Exemption 5 Withholding from Email 1, Email 2, Email 3, Email 6, Email 7, Email 17, and Email 19 ........................................................................................................ 12

    B.   Exemption 5 Withholding from Email 4, Email 20, and Email 21 ............................. 14

    C.   Exemption 5 Withholding from Email 5 ..................................................................... 15

    D.   Exemption 5 Withholding from Email 8 and Email 13 ............................................... 16

    E.   Exemption 5 Withholding from Email 9 ..................................................................... 17

    F.   Exemption 5 Withholding from Email 10, Email 11, and Email 12 ........................... 17

    G.   Exemption 5 Withholding from Email 14 and Email 18 ............................................. 18

    H.   Exemption 5 Withholding from Email 15 and Email 16 ............................................. 19

    I.   Exemption 5 Withholding from Production #1 ........................................................... 20

    J.   Exemption 5 Withholding in Excel Spreadsheets ...................................................... 20

II.   CDC Must Reasonably Segregate Non-Exempt Portions of the Records .............................. 21

CONCLUSION .................................................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ........................................... 7

*Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57-58 (D.C. Cir. 2003) ......................... 7

*Brennan Ctr. for Justice at NY Univ. Sch. of Law v. Dep't of Homeland Sec.*, 331 F. Supp. 3d 74,
   93-94 (S.D.N.Y. 2018) ............................................................ 10, 17, 19

*BuzzFeed, Inc. v. DOJ*, 419 F. Supp. 3d 69, 78 (D.D.C. 2019) ....................................... 14, 21, 22

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ...................................................... 7

*Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C.
   Cir. 2014) ................................................................................................ 8

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Just.*, 538 F. Supp. 3d 124, 131
   (D.D.C. 2021) .......................................................................................... 7

*Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989) ..................... 8

*Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 7 (D.C. Cir. 2014) ........................ 8

*Elec. Privacy Info. Ctr. v. IRS*, 910 F.3d 1232, 1237 (D.C. Cir. 2018) ........................ 7

*Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 174 (D.D.C.
   2017).......................................................................................................... 14, 21

*Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) .................. 20, 21

*Loving v. DOD*, 550 F.3d 32, 38 (D.C. Cir. 2008) ..................................................... 14, 20, 21, 22

*Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) ...................... 11, 12

*Media Research Ctr. v. U.S. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ................ 7

*Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enf't*, 486 F. Supp. 3d
   669, 689 (S.D.N.Y. 2020) ...................................................................... 14, 21

*Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1119 (9th Cir. 1988)......................... 21

*Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) . 13, 16, 22

*Quarles v. Dep't of Navy*, 893 F.2d 390, 392, 282 U.S. App. D.C. 183 (D.C. Cir. 1990) ..... 13, 15

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975) .................. 9, 13

*Reporters Comm. for Freedom of the Press v. FBI,* 3 F.4th 350, 361 (D.C. Cir. 2021)... 11, 12, 16

*Rotenberg Educ. Ctr., Inc. v. FDA*, 376 F. Supp. 3d 47, 65 (D.D.C. 2019) .................................. 9

*Tigue v. DOJ*, 312 F.3d 70, 76 (2nd Cir. 2002) .................................................................. passim

*United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261 (2021)......................... 9, 13

**Statutes**

5 U.S.C. § 552 .................................................................................................................. 7, 8

5 U.S.C. § 552(a)(8)(A)(i)(I) ............................................................................................ 11

5 U.S.C. § 552(b) .............................................................................................................. 21

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................... 7

Informed Consent Action Network ("**ICAN**" or "**Plaintiff**") respectfully submits this brief in opposition to the Centers for Disease Control and Prevention ("**CDC**") and U.S. Department of Health and Human Services's ("**HHS**" or together with CDC, "**Defendants**") Motion for Summary Judgment and in support of Plaintiff's Cross-Motion for Summary Judgment. This matter concerns a Freedom of Information Act ("**FOIA**") request submitted by ICAN to CDC seeking copies of records related to Proportional Reporting Ratio ("**PRR**") analyses that CDC performed to detect signals related to adverse events following COVID-19 vaccination. CDC denied the existence of any records and failed to produce any records until after commencement of the instant action. The records eventually produced contain numerous (b)(5) exemptions which Plaintiff challenges. CDC has failed to satisfy its obligations under FOIA and ICAN therefore requests that this Court deny Defendants' motion for summary judgment and grant summary judgment in ICAN's favor.

## INTRODUCTION

The Vaccine Adverse Events Reporting System ("**VAERS**") is co-sponsored and operated by CDC and another federal health agency, FDA. VAERS is a passive reporting system to which medical professionals, pharmaceutical companies, and others can report an adverse event occurring after administration of a vaccine.

Prior to the authorization of the first COVID-19 vaccine in the United States, CDC issued procedures to analyze reports of adverse events after administration of COVID-19 vaccines entitled "Vaccine Adverse Event Reporting System (VAERS) Standard Operating Procedures for

COVID-19." Among other analysis, it required CDC to conduct signal detection using

Proportional Reporting Ratio ("**PRR**") analyses.[1]

Plaintiff wanted to obtain copies of the PRR analysis performed by CDC and so, on June

30, 2022, Plaintiff sent a FOIA request to CDC seeking copies of the following records:

> All records related to Proportional Reporting Ratio (PRR) analyses
> performed "to identify AEs that are disproportionately reported
> relative to other AEs" pursuant to Sections 2.0, 2.3., and 2.3.1 of
> the VAERS Standard Operating Procedures for COVID-19. This
> should include, but not be limited to, all communications
> concerning PRR analyses including communications concerning
> any decision to not conduct PRR analyses.
>
> Information helpful to fulfilling the request: The CDC's
> Immunization Safety Office is the likely custodian of responsive
> records.

On July 29, 2022, CDC issued a final determination letter stating in relevant part:

> A search of our records failed to reveal any documents pertaining
> to your request. The CDC National Center for Emerging and
> Zoonotic Infectious Diseases (NCEZID) Division of Healthcare
> Quality Promotion (DHQP) Immunization Safety Office (ISO)
> relayed the following:
>
> There are no written communications regarding the use of EB over
> PRR for purposes of signal detection. . .
>
> . . . [I]t was determined that the Proportional Reporting Ratio (PRR)
> analyses would not be performed. Instead, the U.S. Food and Drug

---

[1] PRR measures how common an adverse event for a particular vaccine is compared to how common the event is in the overall VAERS database (with data from numerous other vaccines). For example, assume VAERS contained the following data:

|  | COVID-19 Vaccine | All Vaccines |
|---|---|---|
| Only Reports of Myocarditis | 10,000 | 20,000 |
| All Reports | 100,000 | 1,000,000 |
| Rate | 10% | 2% |

To calculate PRR for Myocarditis from the COVID-19 vaccine in VAERS using the above data, one would divide 10%/2% to get a rate of 5 times risk.

> Administration (FDA) performs Empirical Bayesian (EB) data
> mining with VAERS data. . .

While CDC formally advised Plaintiff that it could not locate any documents responsive

to its request, a letter sent to Senator Ron Johnson on September 2, 2022, signed by then-CDC

Director, Rochelle Walensky, made clear CDC had performed this analysis, stating:

> CDC performed PRR analysis between March 25, 2022, through
> July 31, 2022, to corroborate the results of EB data mining.
> Notably, results from PRR analysis were generally consistent with
> EB data mining, revealing no additional unexpected safety signals.

CDC had plainly conducted PRR analysis as far back as March 25, 2022, despite claiming

to Plaintiff on July 29, 2022, that it had no records of any PRR analysis having been performed.

With this information, Plaintiff appealed CDC's final determination, challenging the

adequacy of CDC's search, and pointing out the direct contradiction between CDC's final

determination letter to Plaintiff and Dr. Walensky's letter to Senator Johnson. Despite

acknowledging Plaintiff's appeal, Defendants did not timely respond and so Plaintiff brought the

instant suit.

Throughout the litigation, Defendants continued to delay and obfuscate, finally releasing

records at a slow drip and only when pushed by Plaintiff to do so. In fact, throughout the litigation,

there have been no proactive steps taken by Defendants other than to ask for numerous extensions

(Dkt. 11, Dkt. 13, Dkt. 14, Dkt. 19, Dkt. 22, Dkt. 23, Dkt. 24, Dkt. 25), all but one of which

Plaintiff consented to. While Plaintiff has received additional processing and releases since filing

suit nearly 21 months ago, those productions have been minimal and fraught with issues. The

remaining issues and the subject of this brief are numerous (b)(5) "deliberative process"

exemptions that Defendants have applied to the records it has produced. In the meantime, the

records grow more and more stale as time goes on, directly undercutting the purpose of FOIA.

## BACKGROUND

ICAN is a not-for-profit news media organization that actively investigates and disseminates scientifically based health information regarding the safety of vaccines and other medical treatments for free through its website and its weekly health news and talk show. ICAN's mission is to put health information in the hands of the public to enable informed consent concerning medical decisions.[2]

As part of its mission, on June 30, 2022, ICAN submitted a FOIA request to CDC for records related to PRR analyses performed "to identify AEs [adverse events] that are disproportionately reported relative to other AEs" pursuant to the VAERS Standard Operating Procedures for COVID-19. (Dkt. 1-1 at 7-8.)[3] CDC represents that a CDC FOIA Analyst sent a request for documents to the National Center for Emerging and Zoonotic Infectious Diseases, Immunization Safety Office ("**NCEZID/ISO**") as the likely location of such documents but was informed that *no search had been conducted* for ICAN's request.

On July 29, 2022, twenty-three days after the NCEZID/ISO program informed CDC's FOIA office that **no search had been conducted** for records responsive to ICAN's request, CDC issued its final response which indicated "a search of records failed to reveal any documents pertaining to your request" (Dkt. 1-1 at 16-17.) The final response went on to state that, "it was determined that the Proportional Reporting Ratio (PRR) analyses would not be performed. Instead, the U.S. Food and Drug Administration (FDA) performs Empirical Bayesian (EB) data mining with VAERS data. EB data mining is a statistical method of detecting disproportionate reporting and is considered the "gold standard" for disproportionality analysis." Significantly,

---

[2] https://icandecide.org/.

[3] Plaintiff references the record throughout instead of Defendants' Motion as there were no exhibits or proposed order filed despite their references throughout.

however, these statements made by CDC are false. First, pursuant to the NCEZID/ISO program's July 6 statement, it is not that a search failed to reveal any responsive documents, but that a search was not conducted. Second, ICAN would later learn, only after bringing suit, that there were in fact responsive documents because PRR analyses were indeed performed.

On October 7, 2022, ICAN appealed CDC's denial on the grounds that CDC failed to conduct an adequate search of the requested records. (Dkt. 1-1 at 2-5.) On October 13, 2022, CDC acknowledged receipt of the appeal and advised that it would need to consult with another office. (Dkt. 1-2.)

On March 20, 2023, nearly nine months after submitting its request and having received no further communication from CDC, ICAN filed this suit on the grounds that CDC violated FOIA by failing to issue a timely final determination on its appeal and failing to establish the adequacy of its search. (Dkt. 1.)

After ICAN filed suit, but before CDC filed its Answer on July 25, 2023 (Dkt. 15), CDC made a first production on April 5, 2023, containing 18 pdf pages and 51 Excel files.

On May 25, 2023, after meeting and conferring with Defendants' counsel, ICAN sent counsel for Defendants a detailed letter describing ICAN's challenges to that production, including challenges to (b)(5) redactions that had been applied. Defendants did not respond to the letter, nor did they communicate with ICAN regarding the challenges until months later. Eventually, on September 19, 2023, Defendants stated that they "notified the Agency and anticipate a response from them soon." On October 18, 2023, Defendants notified Plaintiff that CDC was not willing to conduct a search of the three custodians identified by Plaintiff because it did not consider those individuals "custodians" of the records even though all three were directors or team leads at CDC, and all appeared in the mere 18 pages that had been produced.

Not until February 6, 2024, did Defendants produce additional documents after finally agreeing to search the requested custodians' records. The second production contained 25 pdf pages and a re-release of the original 18 pages with some redactions lifted. ICAN notified Defendants' counsel on February 16, 2024 that it was challenging adequacy of search and redactions and provided details and reasoning for those challenges. On March 13, 2023, Defendants' counsel notified ICAN that CDC would rerun the search.

On May 10, 2024, Defendants released a third and final production including 341 additional pages and seven additional Excel spreadsheets to ICAN. Upon review of the produced documents, however, ICAN informed Defendants that the new production had problematic redactions and that ICAN had still not received any re-release of documents with redactions lifted or a Vaughn index for the challenged redactions that had been sent months earlier. Throughout this time, there were no proactive steps taken by CDC to acknowledge those redactions, challenges, or issues raised, other than to reach out to ask for numerous extensions.

Eventually, Defendants produced a draft *Vaughn* index on July 29, 2024.[4] Plaintiff reviewed the index and notified Defendants of the narrowed redactions Plaintiff intended to challenge. The redactions are within hundreds of pages of emails and five full Excel files. On November 1, 2024, after twelve total requests for extensions in this matter, CDC filed the instant motion for summary judgment. (Dkt. 31.) ICAN now opposes CDC's Motion for Summary Judgment and cross-moves for summary judgment as there are no genuine issues of material fact in this matter and CDC has not satisfied its obligations under FOIA.

---

[4] The *Vaughn* index filed by Defendants with their motion for summary judgement is titled as a "Draft Vaughn Index." (Dkt. 31-4.) ICAN notes this as no future edits should be made to the *Vaughn* index as filed with the Court.

## LEGAL STANDARD

A movant is granted summary judgment "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A material fact is a fact that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

"The moving party bears the burden of demonstrating [the] absence of a genuine issue of material fact in dispute." *Media Research Ctr. v. U.S. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). An agency moving for summary judgment must prove that "it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Id.* at 137. An agency withholding records under FOIA has the burden of proving that requested material falls within a FOIA exemption. *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Just.*, 538 F. Supp. 3d 124, 131 (D.D.C. 2021).

FOIA requests often seeks a mixture of exempt and non-exempt records. "For such a request, an agency must segregate the non-exempt information from the exempt information, disclosing the former but not the latter." *Elec. Privacy Info. Ctr. v. IRS*, 910 F.3d 1232, 1237 (D.C. Cir. 2018); *See* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection"). "To withhold records, then, the agency must establish that an exemption applies and, for mixed requests, must still disclose 'all reasonably segregable, nonexempt portions of the requested record(s).'" *Elec. Privacy Info. Ctr.*, 910 F.3d at 1237 (quoting *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57-58 (D.C. Cir. 2003)).

When it withholds records, an agency must prove that its claimed exemptions apply. *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (citing *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989)); *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 7 (D.C. Cir. 2014); 5 U.S.C. § 552(a)(4)(B).

## ARGUMENT

ICAN is entitled to summary judgment because there are no genuine issues of material fact. Defendants are not entitled to summary judgment because they have not proved, and cannot prove, that they have fully discharged their obligations under FOIA. In total, Defendants have made three productions of records. Production #1 consists of 18 pdf pages of records and 51 excel documents; Production #2 consists of 25 pdf pages with a re-release of the original 18 pdf pages with only some challenged redactions lifted; Production #3 consists of 341 pdf pages and 7 Excel spreadsheets. Among these records, some pages were released in full, and many were released partially or fully redacted. ICAN now challenges (b)(5) redactions it identified in response to Defendants' Draft *Vaughn* index in the Production #2 re-release of 18 pdf pages along with the (b)(5) redactions in the 341 pdf pages in Production #3.

Defendants have failed to demonstrate that any legally recognized privilege under Exemption 5 ("(b)(5)") of FOIA applies to the data and information they have withheld from ICAN. Defendants cannot prove that the withheld portions are inter/intra-agency and/or deliberative in nature such that it is reasonably foreseeable that their release would cause harm to an interest protected by that privilege. Even if portions of the redacted documents are deliberative, Defendants must segregate the portions of the documents that are not deliberative in nature. These failures render Defendants' ongoing withholding of portions of records unlawful.

I.    **Exemption 5**

Defendants have not properly demonstrated that the withheld records fall under the scope of Exemption 5. "Exemption 5 claims must be supported with specificity and [in] detail." *Judge Rotenberg Educ. Ctr., Inc. v. FDA*, 376 F. Supp. 3d 47, 65 (D.D.C. 2019) (internal quotation marks omitted). The document must be: (1) an inter-agency or intra-agency document; (2) "predecisional"; and (3) deliberative. *Tigue v. DOJ*, 312 F.3d 70, 76 (2nd Cir. 2002). All three prongs of this standard must be met for an agency to be justified in withholding agency records from public view. *Id.*

With respect to the first prong – whether the withheld records are inter- or intra-agency records – the individuals sending and receiving the redacted records are not all CDC employees. For example, on page 1 of the 341-page production (Production #3), the emails are between Bicheng (Tony) Zhang and Paige Marquez. Mr. Zhang's data analyst title is listed on CDC's website as "non-government."[5] Conversations between "non-government" employees and CDC employees do not fall under the (b)(5) exemption and, therefore, any of the records that involve a non-government employee should be fully disclosed.

With respect to the "predecisional" prong, the Supreme Court has defined predecisional records as those "prepared in order to assist an agency decision maker in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). Documents are deemed to be deliberative if "they were prepared to help the agency formulate its position." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261 (2021). "This standard requires the agency to explain (i) "the nature of the specific deliberative process involved," (ii) "the function and significance of the documents in that process," and (iii) "the nature of the decision making

---

[5] https://directory.psc.gov/hhsdir/eeKey.asp?Key=75006&Format=Table.

authority vested in the document's author and recipient." *Brennan Ctr. for Justice at NY Univ. Sch. of Law v. Dep't of Homeland Sec.*, 331 F. Supp. 3d 74, 93-94 (S.D.N.Y. 2018).

Here, this standard was not met. On February 17, 2023, when NCEZID/ISO Office asserted that no search was conducted for "all communications concerning PRR analysis," its rationale for intentionally failing to conduct a search pursuant to ICAN's FOIA request directly contradicts the asserted privilege. (Andoh Decl. ¶ 8.) As the NCEZID/ISO expert explained on August 10, 2023:

> For clarification, no search was conducted for any communications concerning PRR analyses including communications concerning any decision to not conduct PRR analyses. ISO Leadership explained that Empirical Bayesian (EB) data mining has been the acknowledged "gold standard" of detecting disproportionality for pharmacovigilance, which predates COVID-19. **No formal decision-making process was involved to use EB data mining for COVID-19 vaccines**. Therefore, no responsive documents exist. The use of PRR was included in the VAERS SOP to provide a quick, crude means of detecting disproportionality as desired, to corroborate EB data mining findings. PRR was never intended to serve as the primary means of detecting disproportionality in VAERS.

(Andoh Decl. ¶ 9) (emphasis added).

As the expert explained, **there was no formal decision-making process involved** in deciding whether to use EB data mining over PRR analyses for COVID-19 vaccines. If this statement by the NCEZID/ISO expert is taken as true, then any of the redacted conversations between individuals at CDC concerning PRR cannot be deliberative and/or pre-decisional in nature. As stated above by the expert in its rational for not conducting a search, there was already a standard operating procedure in place for how CDC was evaluating this data. Meaning, there was already a decision made by CDC to use EB data mining and not PRR analysis. Consequently, there was never any deliberative process carried out by CDC about whether to distribute the data publicly, to utilize the PRR system as a primary source of information, or to standardize the

process. CDC cannot have it both ways: refuse to search stating there was no decision-making occurring concerning PRR and then, when forced to search, withhold information based on that very claim: these are decision-making documents. Therefore, these records cannot qualify for Exemption 5 as, fundamentally, they do not meet the three-prong test.

If that were not enough, Defendants have not shown that the people involved in the redacted and withheld communications were decision-makers at CDC (even if there had been any decisions to make).

Finally, to carry its burden for each redaction and withholding, Defendants must demonstrate that "it is reasonably foreseeable that release of those materials **would** cause harm to an interest protected by that privilege." *Reporters Comm. for Freedom of the Press v. FBI,* 3 F.4th 350, 361 (D.C. Cir. 2021) (citing *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020); 5 U.S.C. § 552(a)(8)(A)(i)(I)) (emphasis added). "In the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'– not 'could'– adversely impair internal deliberations." *Reporters Comm. for Freedom of the Press,* 3 F.4th. at 369-70 (quoting *Machado Amadis*, 971 F.3d at 371).

Note that the adverse impact must be on government deliberations, not on government credibility or trust in agencies or even on American's understanding of certain issues. That is not the law. Yet, to support the claim that these materials, if disclosed, would cause harm, Roger Andoh's Declaration states that disclosure of this material would "result[] [in] confusion and misunderstanding [that] would lead to loss of trust and credibility in CDC's initiatives, and degradation of CDC's ability to protect and promote the health of the nation." (Dkt. 31-3, "**Andoh Decl.**".) However, the American public's ability to understand the records and "trust" the records

and therefore the agency are not criteria on which Exemption 5 is based. "Confusion" is mentioned 21 times in the Andoh Decl. as a reason to justify non-disclosure. This is simply not a ground on which to assert this privilege as FOIA does not permit the government to serve as the gatekeeper of information it thinks is too confusing or that could be misinterpreted. The government works for the people and if information that is disclosed raises questions, the government needs to answer those questions. That is the solution – not withholding information.

Further, CDC cannot assert this privilege on the grounds that the public might lose confidence in them if the public were to have access to internal emails regarding vaccine safety, testing, and adverse events. FOIA requests are designed and permitted for this express purpose: "to ensure informed citizens, vital to the functioning of a democratic society."[6] Additionally, Defendants are required to show that the withheld information *would* – not could– adversely impair internal deliberations. *See Reporters Comm. for Freedom of the Press,* 3 F.4th. at 369-70 (quoting *Machado Amadis*, 971 F.3d at 371). Therefore, CDC cannot meet this burden because CDC has not and cannot prove that releasing this redacted material *would* adversely affect agency deliberations.

### A. Exemption 5 Withholding from Email 1, Email 2, Email 3, Email 6, Email 7, Email 17, and Email 19

Email 1 (pages 1-7),[7] Email 2 (pages 8-15), Email 3 (pages 16-23), Email 6 (pages 66-81), Email 7 (pages 82-84), Email 17 (pages 243-258), and Email 19 (pages 260-263) contain discussions that took place between February 23, 2022 and March 3, 2022, involving individuals at CDC concerning PRR. ICAN is challenging the (b)(5) exemptions in the emails, tables and

---

[6] https://www.foia.gov/.

[7] For ease of reference, Plaintiff has adopted Defendants' naming of the records at issue. Thus, Email 1 pertains to the first row in the **May 10, 2024** production table in the Vaughn Index (Dkt. 31-4), Email 2 pertains to the second row, and so forth.

charts displaying data, and attachments.[8] Defendants claim there is pre-decisional and deliberative material exchanged between Bicheng Zhang, Paige Marquez, John Su, and Pedro Moro. These emails contain discussions regarding PRR statistical analysis and tables regarding PRR data and adverse events reported. However, these redactions do not fall under this exemption because they cannot be said to be: (1) an inter-agency or intra-agency document; (2) "predecisional"; **and** (3) deliberative. *Tigue*, 312 F.3d at 76.

On pages 1, 8, and 60, emails were sent to Bicheng Zhang. As previously mentioned, Mr. Zhang's title on CDC website indicates he is "non-government." Therefore, these redactions contained within these records are not inter- or intra-agency exemption and are not protected under Exemption 5. Therefore, these discussions should not be redacted.

Further, to fall under the exemption as "predecisional" or "deliberative", the discussions must be "prepared in order to assist an agency decision maker in arriving at his decision." *Renegotiation Bd.*, 421 U.S. at 184. Documents are deemed to be deliberative if "they were prepared to help the agency formulate its position." *Fish & Wildlife Serv.*, 592 U.S. 261. On Page 8, the discussion involves the factual data included in the reports and the tables. Pure numerical data and "[f]actual information generally must be disclosed." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). That is because "the prospect of disclosure [of this material] is less likely to make an advisor omit or fudge raw facts, while it is quite likely to have just such an effect on materials reflecting deliberative or policy-making processes." *Quarles v. Dep't of Navy*, 893 F.2d 390, 392, 282 U.S. App. D.C. 183 (D.C. Cir. 1990) (internal quotation marks omitted). Decisions in this Circuit have repeatedly held that "raw facts with informational value in their own rights" are not exempt from FOIA, even if they are included in a draft

---

[8] ICAN is not challenging the internal hyperlinks, draft responses of discussions of emails or letters, suggested responses to media/requesters, or any (b)(4) or (b)(6) redactions.

document. *See, e.g.*, *BuzzFeed, Inc. v. DOJ*, 419 F. Supp. 3d 69, 78 (D.D.C. 2019); *accord Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 174 (D.D.C. 2017) (holding that "survey results" and "final survey data" were not protected by the deliberative process privilege). Therefore, these tables and discussions regarding the data itself cannot be said to be predecisional, deliberative, or even interpretational due to the factual nature of numerical data and thus they do not fall under Exemption 5.

Further, the redacted portions of the documents are likely segregable. Even if the deliberative process privilege applies, which it does not appear to apply here, it "does not protect documents in their entirety; if the government can segregate and disclose non-privileged factual information within a document, it must." *Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enf't*, 486 F. Supp. 3d 669, 689 (S.D.N.Y. 2020) (quoting *Loving v. DOD*, 550 F.3d 32, 38 (D.C. Cir. 2008). *See* Section II, *infra*.

**B. Exemption 5 Withholding from Email 4, Email 20, and Email 21**

Email 4 (pages 24-59), Email 20 (pages 271-304), and Email 21 (pages 305-340) contain discussions between April 8 and April 20, 2022, involving individuals at CDC concerning "Table 5 COVID-19 Weekly."

On Page 24, emails were sent to Bicheng Zhang. As previously mentioned, Mr. Zhang's title on the CDC website indicates he is "non-government." Therefore, the redactions contained within these records do not fall under the inter- or intra-agency exemption under Exemption 5. Therefore, these discussions should not be redacted.

Pages 25-58, 272-304, and 305-340 are tables that are withheld in full that are not predecisional or deliberative in nature. The numerical data included in these charts are simply data points that are not being discussed as edits or suggested numerical values and should be

segregated from the table. Release of numerical data and release of internal discussions regarding the release of that data are two separate issues that cannot be combined to withhold large charts of data and information from the public view. *Quarles*, 893 F.2d 390, 392, 282 U.S. App. D.C. 183.

Therefore, these charts also contain material that is segregable as the raw data included in the charts are not subject to Exemption 5. CDC employed Exemption 5 to withhold 69 pages of tables and charts displaying numerical data. Exemption 5 cannot be validly applied to withhold data. *Id.*

### C.  Exemption 5 Withholding from Email 5

Email 5 (pages 64-65) contains email discussions on May 13, 2021, involving individuals at CDC concerning PRR for myocarditis. First, CDC did not demonstrate how the withheld information qualifies as predecisional and deliberative. *See Tigue*, 312 F.3d at 76. The Andoh Declaration stated that the withheld information consists of predecisional, deliberative discussions among CDC subject-matter experts concerning preliminary statistical analysis and predates any final decision or output. However, Defendants employed Exemption 5 to withhold portions of the email from Tom Shimabukuro on page 64 of the Production. This email does not appear to include "deliberative data" or be predecisional and deliberative and, therefore, should not have been withheld under Exemption 5. The CDC employees are discussing the data produced in the tables and the analysis of that data. Shimabukuro states "This isn't super urgent and I would be open to however you think is the best way to proceed without taking up too much time and person power." CDC cannot be justified in redacting records that discuss adverse events of a mandated vaccine under a large umbrella of "predecisional and deliberative" redactions when the

lead scientist is stating the material discussed was not "super urgent" and where Defendant has not shown Shimabukuro to be a decision-maker.

Further, the Andoh Declaration states that release of this data would lead to public confusion over the contents of the PRR tables and erode trust in the CDC. (Andoh Decl. ¶ 45.) But, again, this is not a recognized exception under the statute. Therefore, Defendants have failed to explain how it is reasonably foreseeable that the release of the withheld information would adversely impair their internal deliberations. *See Reporters Comm. for Freedom of the Press*, 3 F.4th. at 369-70.

### D.  Exemption 5 Withholding from Email 8 and Email 13

Email 8 (page 85) and Email 13 (page 180) contain emails on July 22, 2022, involving individuals at CDC concerning discontinuing COVID-19 automated tables.

First, Defendants did not demonstrate how the withheld information qualifies as predecisional and deliberative. *Tigue*, 312 F.3d at 76. The Andoh Declaration states that the withheld information "consist of pre-decisional, deliberative discussions among CDC subject-matter experts concerning generating PRR outputs on a specific age group." (Andoh Decl. ¶ 47.) However, again, this exemption does not include all discussion on data findings and statistical analysis. Purely numerical data generated by this method of research should not be withheld in its entirety. *Petroleum Info. Corp.*, 976 F.2d at 1434. Defendants fail to include a specific argument supporting its assertion of the predecisional and deliberative privilege. The Andoh Declaration states, "The withheld material is predecisional because it predates any agency final decision our output… The withheld material is deliberative because it consists of pre-decisional, deliberative discussions and thoughts on the matter…" (Andoh Decl. ¶¶ 48-49.) Defendants' circular argument is to state that the material is predecisional because it predates a decision and

deliberative because it is predecisional – this is void of any honest assessment and the specifics required to uphold this exemption.

### E.  Exemption 5 Withholding from Email 9

Email 9 (page 154-157) contains emails between May 13 through May 18, 2022, involving individuals at CDC concerning "Questions on Pulmonary Embolism."

Defendants failed to prove the applicability of Exemption 5 here too. The Andoh Declaration states that the withheld information "contain communications regarding whether the CDC was monitoring signals for Pulmonary embolism." (Andoh Decl. ¶ 54.) First, this is factual, not decisional: either CDC was or was not monitoring for signals. In addition, Defendants employed Exemption 5 to withhold portions of the email from Elaine Miller on page 154 of the production wherein Elaine Miller states: "Pulmonary Embolism is on the FDA signals list for Janssen, but not mRNA vaccines." The rest of the email is redacted and does not appear to be predecisional or deliberative, but a continued explanation of that statement.

Furthermore, Defendants did not explain the nature of the specific deliberative process involved, the function and significance of the withheld information in that process, or the nature of the decision-making authority vested in the information's author(s) and recipient(s). *Brennan Ctr. for Justice*, 331 F. Supp. 3d at 93-94. Defendants' failure to demonstrate how the withheld information qualifies as predecisional and deliberative demands disclosure.

### F.  Exemption 5 Withholding from Email 10, Email 11, and Email 12

Email 10 (page 158-166), Email 11 (page 167-172), and Email 12 (page 173-179) contain emails between June 22 through June 23, 2022, involving individuals at CDC concerning a reporter inquiry. ICAN is not challenging the proposed responses to the reporter that is repeated throughout these pages. However, ICAN is challenging the remaining (b)(5) redactions.

The Andoh Declaration simply repeats that the "the withheld material is predecisional because it predates any agency final decision… the withheld material is deliberative because it consists of pre-decisional, deliberative communications… " (Andoh Decl. ¶ 62.) Again, this is a circular justification for the exemption and is void of any specificity required by law. Additionally, Defendants employed Exemption 5 to withhold portions of the email from Tom Shimabukuro on page 167 of the production. This email does not appear to include "deliberative data" or be predecisional and deliberative and, therefore, should not have been withheld under Exemption 5. This email discusses the use of PRR when FDA is conducting EB data mining and does not include deliberations on how to respond to a reporter. This discussion should not be redacted.

### G. Exemption 5 Withholding from Email 14 and Email 18

Email 14 (page 181) and Email 18 (page 259) contain an email from February 13, 2022, involving individuals at CDC concerning PRR for COVID-19 booster doses. Defendants have failed to prove the applicability of Exemption 5. The Andoh Declaration did not demonstrate how the withheld information qualifies as predecisional and deliberative. *Tigue*, 312 F.3d at 76. Andoh states that the withheld information "consists of pre-decisional and deliberative thoughts from CDC subject-matter expert [sic] to CDC statistician [sic] regarding proposed PRR analyses for a short paper. This deliberation explored different analytic approaches, including different ways of performing PRR analysis" (Andoh Decl. ¶ 66.) However, Defendants employed Exemption 5 to withhold portions of the email from Pedro Moro on pages 181 and 259 of the production. This email does not appear to include "deliberative data." To the contrary, this email seems to be discussing factual and concrete data and the interpretation of such data. Simply because these researchers may place this data in a short paper does not exempt the data and statistical findings

of CDC employees. Therefore, the application of the predecisional and deliberative privilege fails and the records should not be redacted.

### H.  Exemption 5 Withholding from Email 15 and Email 16

Email 15 (page 182-183) and Email 16 (page 184-186) contain an email discussion between April 26 to April 27, 2022, involving individuals at CDC concerning the "Composite Report Working Group." Defendants have failed to prove the applicability of Exemption 5. First, the Andoh Declaration did not demonstrate how the withheld information qualifies as predecisional and deliberative. *Id*. The Andoh Declaration states that, "The redacted material consists of pre-decisional and deliberative discussions between CDC subject-matter experts regarding topics for discussion during a forthcoming meeting, including technical problems with the reporting system." (Andoh Decl. ¶ 71.) Technical problems are not pre-decisional. Further, this assertion does not justify the redactions throughout these emails. The email from Paige Marquez on page 184 is almost fully redacted and does not appear to include "deliberative data" or be predecisional and deliberative and, therefore, should not have been withheld under Exemption 5.

Furthermore, Defendants did not explain the nature of the specific deliberative process involved, the function and significance of the withheld information in that process, or the nature of the decision-making authority vested in the information's author(s) and recipient(s). *Brennan Ctr. for Justice*, 331 F. Supp. 3d at 93-94. This failure to demonstrate how the withheld information qualifies as predecisional and deliberative indicates the information withheld is not predecisional or deliberative.

Lastly, Defendants did not demonstrate that there is no reasonably segregable information within the production. *Loving*, 550 F.3d at 41. Defendants employed Exemption 5 to withhold

19

large blocks of information from the emails on pages 182-186. The use of Exemption 5 to withhold the information in these emails suggests segregable information exists. *See* Section II, *infra*.

### I. Exemption 5 Withholding from Production #1

Defendants' brief and Andoh Declaration fail to address ICAN's challenges of the original 18-Page Production (Production #1).

In Production #1, ICAN challenges the (b)(5) redactions applied to the majority of the pages in the production. Examples of how CDC employed Exemption 5 to withhold non-privileged information is seen in a March 1, 2022, email from A. Hause that asks, "Who's taking a look at the flu reports for this age group?" That same email appears again within the production but the words "this age group" are redacted. Clearly these words ("this age group") are not pre-decisional or deliberative, nor did the release of them cause harm to any interest protected by the (b)(5) exemption. This inconsistent, and unjustified, redaction casts doubt on all other redactions within the productions.

A second example that demonstrates the non-privileged nature of the withheld information is located on pages 13 and 17 of the 18-page pdf. It appears CDC redacted the number of reports of anaphylaxis on these pages. These anaphylaxis report numbers constitute non-privileged, factual information which must be disclosed. *See Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002).

### J.  Exemption 5 Withholding in Excel Spreadsheets

Five of the seven Excel spreadsheets from Production #3 were fully redacted. These spreadsheets appear to contain purely factual data, numbers, and numerical reports, which again, must be disclosed. *Id.* As previously mentioned, data and factual information are not exempt from

FOIA, even if they are in a draft form. *See,* e.g., *BuzzFeed, Inc.*, 419 F. Supp. 3d at 78; *accord Hardy*, 243 F. Supp. 3d at 174. Therefore, they all should be released. Defendants' argument that these tables include various iterations of table layout, different displays of items, etc. do not render them exempt from disclosure. (Andoh Decl. ¶ 80.) That "formatting would differ from final tables" and any "confusion" on the part of the public as a result of that are not the criteria to assess the validity of Exemption 5. (Andoh Decl. ¶ 81.)

## II.   <u>CDC Must Reasonably Segregate Non-Exempt Portions of the Documents</u>

Even if the deliberative process privilege applies to any of the redactions, it "does not protect documents in their entirety; if the government can segregate and disclose non-privileged factual information within a document, it must." *Nat'l Day Laborer Org. Network*, 486 F. Supp. 3d at 689 (quoting *Loving*, 550 F.3d at 38. "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). Only factual material that is "inextricably intertwined with exempted portions" of the documents need not be disclosed. *Johnson*, 310 F.3d at 776.

Further, the government has the "burden of demonstrating that no reasonably segregable information exists within . . . documents withheld." *Loving*, 550 F.3d at 41. "[T]he ultimate objective of exemption 5 is to safeguard the deliberative process of agencies, not the paperwork generated in the course of that process." *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1119 (9th Cir. 1988).

Here, Defendants have not demonstrated that there is no reasonably segregable information within the redactions. *Loving*, 550 F.3d at 41. Defendants employed Exemption 5 to withhold records in their entirety on pages 25-59. On page 25, there are tables that appear to contain purely factual and data/statistical information, which should not be withheld under

Exemption 5. *See Petroleum Info. Corp.*, 976 F.2d at 1434. Defendants provided no information regarding what data was included in the tables, what information the tables contained, or specifically why the exemption applies. Defendants' failure to explain how the tables qualify as predecisional and deliberative coupled with their refusal to provide segregated information demands disclosure.

Yet another example begins on page 67, where there are entire pages under large block redactions. These redactions cover a table in which portions, if not the table in its entirety, should be segregated and produced. Again, data and statistics are not deliberative or predecisional in nature. This table likely contains numerical data that should be segregated and is not exempt under Exemption 5. *See BuzzFeed, Inc.*, 419 F. Supp. 3d at 78. Defendants claim that these tables are preliminary in that they include "various iterations of table layout" (Dkt. 31-4.) However, variations in the way tables are formatted are just additions to numerical data and do not rise to the level of being predecisional or deliberative and should not be included under this exemption. *Id.*

The Andoh Declaration summarily states that the "information should be withheld pursuant to FOIA's Exemption 5… and cannot be reasonably segregated." (Andoh Decl. ¶ 2). The *Vaughn* index states 26 times simply that "There is no reasonably segregable, non-exempt information that has been withheld." This does satisfy Defendants' burden.

## CONCLUSION

Exemption 5 does not exist to protect factual data from disclosure. Exemption 5 also does not exist to protect information that the government may deem too confusing for Americans, embarrassing, or adverse to its policies. Unless the segregated information is an inter/intra-agency communication, pre-decisional, *and* would cause harm to the deliberative process (not to the

agency, its reputation, or to the support of a pharmaceutical product), the information must be disclosed. The government has failed to meet that burden.

For the foregoing reasons, the Court should deny Defendants' Motion for Summary Judgment, grant Plaintiff's Cross-Motion for Summary Judgment, and order Defendants to segregate and disclose all non-exempt portions of the responsive records.

Dated:    December 17, 2024             SIRI & GLIMSTAD LLP

                                        /s/ Elizabeth A. Brehm
                                        Elizabeth A. Brehm, DC Bar No. NY0532
                                        **Siri & Glimstad LLP**
                                        745 Fifth Avenue, Suite 500
                                        New York, New York 10151
                                        Tel: (212) 532-1091
                                        ebrehm@sirillp.com