UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| INFORMED CONSENT ACTION NETWORK, <br><br>        Plaintiff, <br><br>    v. <br><br>CENTER FOR DISEASE CONTROL AND PREVENTION, et al., <br><br>        Defendants. | Civil Action No. 23-0747 (AHA) |

**OPPOSITION TO PLAINTIFF'S CROSS MOTION AND REPLY TO PLAINTIFF'S
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

By and through undersigned counsel, Defendants, including the Centers for Disease
Control and Prevention ( "CDC"), respectfully submit this brief in opposition to Plaintiff's cross
motion for summary judgment (ECF No. 32, "Plaintiff's Motion") and in further support of
Defendants' motion for summary judgment (ECF No. 31, "Defendants' Motion").

In a nutshell, Plaintiff Informed Consent Action Network opposes Defendants' Motion and
moves for summary judgment on the grounds that the deliberative process privilege does not apply
because a party to CDC deliberations regarding the use of Proportional Reporting Ratio (or "PRR")
analysis to gauge adverse effects of the COVID 19 vaccine in relation to other adverse effects in
the CDC's Vaccine Adverse Effects Reporting Systems ("VAERS") database was not a
government employee. *See* Pl. Br. (ECF No. 32-1) at 9. Plaintiff also argues, based purely on
speculation, that "[i]f [a] statement by [a purported CDC] expert is taken as true," then the
discussions amongst CDC officials could not have been deliberative. *Id*. at 10. As explained
further below, Plaintiff's speculation and reasoning in arriving at its conclusion is tortured.

Finally, contrary to the law in this Circuit, Plaintiff argues that CDC somehow fails to demonstrate foreseeable harm. *Id*. at 11.

## I.    <u>Specific Email Challenges</u>

First, one of Plaintiff's overarching arguments is that the emails cannot be deliberative because, during the administrative phased, before this case was filed, CBC had stated that he never had deliberations regarding Proportional Reporting Ratio analysis.  Plaintiff, however, also concedes that the disputed records "contain discussions that took place [in 2022] involving individuals at CDC concerning" Proportional Reporting Ratio analysis, which contradicts Plaintiff's overarching argument.  Pl. Br. (ECF No. 32-1) at 12.  Second, Plaintiff speculates that the withheld records could not be deliberative because "there was no formal decision-making process involved in deciding whether to use . . . [Proportional Reporting Ratio] analysis for COVID-19 vaccines."  Pl. Br. (ECF No. 32-1) at 10.  In any event, Plaintiff argues that seven of the withheld emails over an almost three-hundred-page range cannot be deliberative because a "non-government" individual, Bicheng Zhang, is a party to three of those emails at pages 1, 8, and 60.  *See* Pl. Br. (ECF No. 32-1) at 13.  The three emails Plaintiff challenges pertain to "discussions from February 23 to March 3, 2022, between CDC Vaccine Safety subject-matter experts concerning Proportional Reporting Ratio (PRR) output."  Andoh Decl. (ECF No. 31-3); *see also Vaughn* Index (ECF No. 31-4) at 2-3.

"The discussions pertain to the preliminary findings of the [Proportional Reporting Ratio] statistical analysis and reflect the deliberative process agency subject-matter experts used to finalize the specific items to be included within the tables that were most relevant and beneficial for use by relevant people at the agency."  Andoh Decl. (ECF No. 31-3) ¶ 26.  "These preliminary findings are the result of an ongoing process of revisions and consultations and represent the exchange of ideas and viewpoints among subject-matter experts whose expertise and judgment are

believed to be relevant. The information discussed and presented in the form of tables was intended for internal deliberative use and does not constitute the results that would be shared internally within the agency." *Id*. Bicheng Zhang, a CDC Statistician and CDC contract employee, was a party to these three emails. *See id*. There is no evidence that Mr. Chang was anything other than a CDC contract employee at the time. Plaintiff is wrong to indicate otherwise.

"The redacted material also contains questions, comments, and proposed changes . . . [and] contains preliminary versions of a COVID-19 [Proportional Reporting Ratio] Table. These preliminary tables include various iterations of a table layout (e.g., column order, field sorting), how certain items were displayed, how often the tables were to be updated, and how the multiple tables were organized when compiled. The final versions of these tables were previously released to [Plaintiff] and Epoch Times through a [FOIA] request, and Epoch Times subsequently disseminated them to the general public." Andoh Decl. (ECF No. 31-3) ¶¶ 28-29. "Release [of the preliminary tables] would compromise the deliberative process of the agency in administrative matters as it would reveal internal deliberations and preliminary thoughts on the matter, including the exchange of ideas, language choices, and opinions offered by [Immunity Safety Office] leadership." *Id*. at 9-10 ¶ 31. "Disclosing such thought processes and communications would inhibit open and frank discussions between CDC employees on matters related to COVID-19 statistical analyses and internal processes." *Id*. "This would result in a chilling effect on intra- and inter-agency communications on critical matters related to how CDC better assesses health risks associated with a vaccine and reduces the ability of agency officials to deliberate in a meaningful manner during an ongoing public health emergency." *Id*.

In considering a motion for summary judgment under FOIA, courts may award summary judgment solely on the basis of information provided by the department or agency in affidavits or

declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Aguiar v. DEA*, 865 F.3d 730, 734-35 (D.C. Cir. 2017) ("The Courts may grant summary judgment based solely on the agency's declarations if they are not contradicted by contrary record evidence or by evidence of the agency's bad faith."). CDC's averments are sufficiently detailed to merit the presumption of good faith accorded agencies' declarations. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("We have explained that agency affidavits that are 'relatively detailed and non-conclusory' are 'accorded a presumption of good faith.'").

Although Plaintiff cites Mr. Zhang's name on three emails as the basis of its' challenge to seven emails, the challenge is baseless speculation that Mr. Zhang, a CDC contractor, is therefore, not a CDC employee thereby vitiating the deliberative process privilege claim. Plaintiff is wrong because Mr. Zhang "function[ed] just as an employee would be expected to," in the sense that Mr. Zhang did not "represent an interest of [his] own, or the interest of any other entity." *Am. Oversight v. Dep't of Health & Hum. Servs.*, 101 F.4th 909, 916 (D.C. Cir. 2024). Mr. Zhang's "only obligations [were] to truth and its sense of what good judgment calls for [] and in those respects the consultant functions just as an employee would be expected to do." *McKinley v. FDIC*, 744 F. Supp. 2d 128, 137 (D.C. Cir. 2010) (citing *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 10 (2001)). Therefore, Plaintiff has not rebutted the CDC's good faith presumption that the three emails where Mr. Zhang, a contractor, are mentioned are inter-agency records, subject to Exemption 5.

In another failed argument to CDC's deliberative process exemption claim, Plaintiff cites a purported CDC statement from before this action was filed. Plaintiff appears to argue that the deliberative process privilege does not apply because at some point CDC stated that "there was no formal decision-making process involved in deciding whether to use [Empirical Bayes method][1] data mining over [Proportional Reporting Ratio] analyses for COVID 19 vaccines." Pl. Br. (ECF No. 32-1) at 10. Plaintiff continues that: "If this statement by [the CDC] is taken as true, then any of the redacted conversations between individuals at CDC concerning [Proportional Reporting Ratio analyses] cannot be deliberative and/or pre-decisional in nature." *Id*. Plaintiff's surmise misses the mark completely. First, nowhere in the CDC quoted statement did the purported expert state that no formal decision-making process was involved to use Proportional Reporting Ratio analyses, which is the subject of Plaintiff's FOIA request. The statement involved the Empirical Bayes method not the Proportional Reporting Ratio analysis. Second, the statement itself has nothing to do with whether the material redacted was pre-decisional and therefore subject to Exemption 5. In fact, it bolsters the pre-decisional nature of the material if there was no formal decision-making process. Finally, the Andoh Declaration's statements about the use of Proportional Reporting Ratio analysis cannot be controverted by mere speculation, and thus, the withheld emails are protected by the deliberative process privilege. *See SafeCard*, 926 F.2d at 1200 (unsupported and speculative allegations on the part of the government are insufficient to overcome the presumption of good faith accorded to agency declarations).

---

[1]     Empirical Bayes (or "EB") methods are procedures for statistical inference in which the prior probability distribution is estimated from the data. This approach stands in contrast to standard Bayesian methods, for which the prior distribution is fixed before any data are observed. *See* https://en.wikipedia.org/wiki/Empirical_Bayes_method.

Plaintiff's next assertion fares no better.  As to email no. 5, Plaintiff asserts that the deliberative process should not apply because "[t]his email does not appear to include 'deliberative data' or be predecisional and deliberative [because] CDC employees are discussing the data produced in the tables and the analysis of that data [and a participant] states 'This isn't super urgent.'"  Pl. Br. (ECF No. 32-1) at 15.  It is not clear how the urgency of emails goes to whether it is protected by the deliberative process privilege especially given that Plaintiff concedes that "employees are discussing data produced in the table and the analysis of that data."  *Id*.  To be sure, the content of the relevant email is a discussion CDC Vaccine Safety subject-matter experts are having concerning Proportional Reporting Ratio analysis for myocarditis.  *See* Andoh Decl. (ECF No. 31-3) ¶ 40; *see also Vaughn* Index (ECF No. 31-4) at 5.  The email chain "discuss[es] . . . how CDC subject-matter experts may generate and compare the analytic findings prior to publication. The redacted material also includes questions, comments, and proposed analysis." Andoh Decl. (ECF No. 31-3) ¶ 41.  "[I]t predates any agency final decision or output and consists of pre-decisional, deliberative discussions and thoughts on the matter, including the exchange of ideas, language choices, and opinions offered by ISO leadership."  *Id*. ¶¶ 42-43.  Thus, the Andoh Declaration is unrebutted.

With regard to email no. 9, Plaintiff suggests that factual information should not be redacted if it is not predecisional.  *See* Pl. Br. (ECF No. 32-1) at 17.  Furthe, Plaintiff speculates that the remainder of page 154 from email no. 9 "does not appear to be predecisional or deliberative."  *Id*.  Actually, "email 9 (page 154-157) contains emails between May 13 through May 18, 2022, between CDC Vaccine Safety subject matter experts concerning Questions on Pulmonary Embolism."  Andoh Decl. (ECF No. 31-3) ¶ 52.  The Andoh Declaration clearly states that "[t]he withheld material consists of internal hyperlinks that leads subject-matter experts to

internal CDC shared drives. These share drives house files that provide access to internal data and preliminary COVID-19 statistical tables. Release of the hyperlinks might allow an outsider to access the CDC draft documents in those drives[.]" *id*. ¶ 53, but Plaintiff appears to pretend this justification does not exist and instead states that "Defendant did not explain the nature of the specific deliberative process involved." Pl. Br. (ECF No. 32-1) at 17. Again, the Andoh Declaration is unrebutted in any meaningful way.

Likewise, with regard to emails designated as 10, 11, and 12, referring to portions of the Andoh Declaration, Plaintiff asserts conclusory that "[t]his email does not appear to have deliberative data" and that the declaration is "circular" and "void of any specificity," while ignoring the actual justifications for the withholdings. Pl. Br. (ECF No. 32-1) at 17-18. Plaintiff again ignores that fact that the Andoh Declaration makes clear that the "[r]edacted material [in these emails] contains pre-decisional and deliberative discussions regarding what the response should be to a FOIA inquiry submitted by a reporter." Andoh Decl. (ECF No. 31-3) ¶ 60. "The Vaccine Safety Team Lead provided feedback and clarification regarding the recommended [response] previously provided by a staff member and explained to the Health Communications Specialist the exploratory work that was taking place at the time regarding the statistical analyses and the" Proportional Reporting Ratio. *Id*. The remainder of Plaintiff's challenges to the emails fall into the same category and do not meaningfully challenge the Andoh Declaration.

## II.    **Plaintiff's Foreseeable Harm Challenges**

In the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure "would"— not "could"—adversely impair internal deliberations. *See Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020). Since *Amadis*, courts have made clear that a "perfunctory state[ment] that disclosure of all the withheld information—regardless of category or substance—would jeopardize

the free exchange of information between senior leaders within and outside of the [agency]" will not suffice. *Rosenberg v. Dep't of Def.*, 342 F. Supp. 3d 62, 106 (D.D.C. 2018).

Here, CDC has averred non-perfunctory statements that would demonstrate foreseeable harm beyond the "chill" factor. *See generally* Andoh Decl. (ECF No. 31-3). For example, "[r]elease would cause harm by providing the public with incomplete, preliminary, or confusing information on a sensitive matter that this deliberative process is designed to avoid." *Id.* ¶ 64. "[T]he resulting confusion and misunderstanding would lead to loss of trust and credibility in CDC's initiatives, and its ability to protect and promote the health of the nation." *Id.* Plaintiff's rebuttal is that "the American public's ability to understand the records and 'trust' the records and therefore the agency are not criteria on which Exemption 5 is based." Pl. Br. (ECF No. 32-1) at 12. "'Confusion' is . . . simply not a ground on which to assert this privilege." Plaintiff is wrong. "'[P]remature disclosure' of draft policies may cause confusion over an agency's actual position." *Jud. Watch, Inc. v. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017). Public confusion in the public health context carries the required "link between the specified harm and specific information contained in the material withheld" and, most significantly, it satisfies the statutory nexus requirement by connecting the foreseeable harm to the "interest protected by [the FOIA] exemption" at issue. *Juul Labs, Inc. v. FDA*, 731 F. Supp. 3d 46, 71-72 (D.D.C. 2024) (discussing confusion in the public health context in the Exemption 5 context); *see also Jud. Watch, Inc. v. Dep't of Com.*, Civ. A. No. 17-1283 (EGS), 2020 U.S. Dist. LEXIS 221480 *19 (D.D.C. Nov. 25, 2020) ("Commerce has met its burden of articulating the foreseeable harm disclosure of the information would have on the ability of agency scientists to engage in meaningful scientific debate and collaboration to arrive at quality agency decisions). Thus, Plaintiff's sole rebuttal to CDC's foreseeable harm averments are baseless.

### III.    <u>Releasable Facts are Inextricably Intertwined with Privileged Material</u>

"For each document that was withheld or redacted, a line-by-line review was completed to determine whether any portions of the documents could be released. CDC has released all non-exempt material, unless the material is inextricably intertwined with exempt material."  Andoh Decl. (ECF No. 31-3) ¶ 82.  For each document that was withheld in its entirety, it was determined that there was not reasonably segregable, non-exempt information in this document, because any non-exempt information would leave only meaningless words and phrases.  *Id*. ¶ 83.  Plaintiff generally asserts that "purely numerical data generated by this method of research should not be withheld in its entirety."  Pl. Br. (ECF No. 32-1) at 20.  Further, Plaintiff states blanketly that "if the government can segregate and disclose non-privileged factual information within a document, it must."  *Id*. at 14.  Plaintiff, however, does not address the fact that CDC avers that factual material was either inextricably intertwined in the case of partial redactions or segregation would result in disjointed words in the case of full redacted pages.  Andoh Decl. (ECF No. 31-3) ¶¶ 82-83.

"Factual material is not protected under the deliberative process privilege unless it is 'inextricably intertwined' with the deliberative material."  *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997); *see also Elec. Privacy Info. Cntr. v. Dep't of Homeland Sec*., 892 F. Supp. 2d 28, 43 (D.D.C. 2012) (quoting *Loving v. Dep't of Def*., 550 F.3d 32, 41 (D.C. Cir. 2008)) ("FOIA requires only separation of what is 'reasonably segregable,' permitting the agency to avoid committing significant time and resources 'to the separation of disjointed words, phrases, or even sentences [that] have minimal or no information content.")).  The Andoh Declaration amply establishes that the redacted material could not be segregated.

For the foregoing reasons, Defendants are entitled to summary judgment.

## CONCLUSION

For these reasons, and those set forth in Defendants' moving papers, the court should enter summary judgment in favor of Defendants and deny Plaintiff's cross motion for summary judgment. A proposed order is enclosed herewith.

Dated: January 31, 2025
      Washington, DC

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:     */s/ Kenneth Adebonojo*
     KENNETH ADEBONOJO
     Assistant United States Attorney
     601 D Street, NW
     Washington, DC 20530
     (202) 252-2562

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INFORMED CONSENT ACTION
NETWORK,

        Plaintiff,

   v.

CENTER FOR DISEASE CONTROL AND
PREVENTION, *et al*.

        Defendants.

Civil Action No. 23-0747 (AHA)

## [PROPOSED] ORDER

UPON CONSIDERATION of Plaintiff's Cross Motion for Summary Judgment, and for good cause shown and the entire record herein, it is hereby

ORDERED that Plaintiff's Cross Motion is DENIED; and it is further

ORDERED that Defendants are entitled to judgment as a matter of law and this action is dismissed with prejudice.

SO ORDERED:

_____
Dated

_____
AMIR H. ALI
United States District Judge

- 11 -