**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INFORMED CONSENT ACTION NETWORK,<br><br>                      Plaintiff,<br><br>     v.<br><br>CENTERS FOR DISEASE CONTROL and U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>                      Defendants. | Civil Action No. 23-cv-00747-TSC |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS
CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 1

I.  Defendants' Proffered Justifications for the (b)(5) Redactions Do Not Satisfy the Legal Standard ........................................................................................................................... 1

II.  Plaintiff's Foreseeable Harm Challenges ................................................................................. 8

III. Releasable Facts are Inextricably Intertwined with Privileged Material ............................... 10

CONCLUSION ............................................................................................................................... 10

i

# TABLE OF AUTHORITIES

**Cases**

*Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) ...................................................... 8

*Ankele v. Hambrick*, 286 F.Supp.2d 485, 496 (E.D. Pa. 2003) ...................................................... 4

*Brennan Ctr. for Justice at NY Univ. Sch. of Law v. Dep't of Homeland Sec.*, 331 F. Supp. 3d 74, 93-94 (S.D.N.Y. 2018) ................................................................................................................ 2, 7

*BuzzFeed, Inc. v. DOJ*, 419 F. Supp. 3d 69, 78 (D.D.C. 2019) ...................................................... 5

*Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 174 (D.D.C. 2017) ............................................................................................................................................... 5

*Jud. Watch, Inc. v. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017) ......................................... 9

*Judge Rotenberg Educ. Ctr., Inc. v. FDA*, 376 F. Supp. 3d 47, 65 (D.D.C. 2019) ........................ 1

*Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) .............................. 9

*Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) ...................................................................... 9

*Nat'l Ass'n of Crim. Def. Lawyers v. United States DOJ Exec. Office for United States Attys.*, 829 F.3d 741, 744 (D.C. Cir. 2016) ........................................................................................................ 9

*Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) ..... 5, 6, 10

*Quarles v. Dep't of Navy, 893 F.2d 390, 392, 282 U.S. App. D.C. 183 (D.C. Cir. 1990)* .............. 6

*Reporters Comm. for Freedom of the Press v. FBI,* 3 F.4th 350, 361 (D.C. Cir. 2021) ................. 9

*Rosenberg v. Dep't of Def.*, 342 F. Supp. 3d 62, 106 (D.D.C. 2018) ............................................ 8

*Tigue v. DOJ*, 312 F.3d 70, 76 (2nd Cir. 2002) ........................................................................ 1, 4

*United States Fish & Wildlife Serv. v. Sierra Club, Inc.,* 592 U.S. 261, 141 S. Ct. 777 (2021)..... 5

**Statutes**

5 U.S.C. § 552(a)(8)(A)(i)(I) ........................................................................................................ 9

**INTRODUCTION**

Plaintiff, Informed Consent Action Network (**"Plaintiff"**), respectfully submits this Reply Memorandum in further support of its Cross-Motion for Summary Judgment.

**ARGUMENT**

In their Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Dkt. 35, hereinafter "**Opposition**"), Defendants make three primary arguments as to why Plaintiff is not entitled to summary judgment in this matter. First, Defendants argue the redactions applied throughout email chains in the produced documents are justified. (Dkt. 33 at 2.) Second, Defendants argue that the foreseeable harm standard required by FOIA has been satisfied. (Dkt. 33 at 7.) Finally, Defendants assert that the documents have been reasonably segregated due to privileged material being inextricably intertwined with releasable facts. (Dkt. 33 at 9.) Plaintiff will address why each of Defendants' arguments fail and, thus, why Plaintiff is entitled to summary judgment.

**I.   Defendants' Proffered Justifications for the (b)(5) Redactions Do Not Satisfy the Legal Standard**

To reiterate, for an application of Exemption 5 to be lawful, a three-prong test *must be* met with specificity and explained in detail. *See Judge Rotenberg Educ. Ctr., Inc. v. FDA*, 376 F. Supp. 3d 47, 65 (D.D.C. 2019). The document must be: (1) an inter-agency or intra-agency document; (2) "predecisional"; and (3) deliberative. *Tigue v. DOJ*, 312 F.3d 70, 76 (2nd Cir. 2002). Defendants' responses to the specific email challenges are a disarray of arguments that do not rise to the level of satisfying this three-prong test.

Specifically, the first prong requires that in order to be withheld, communications must be inter- or intra-agency communications. This requires that the individuals exchanging these communications must be agency employees. Plaintiff asserts that pages 1, 8, 24, and 60 of

Production #3 are improperly withheld pursuant to Exemption 5 because these emails include Bicheng (Tony) Zhang. By CDC's own admission via their official website, Mr. Zhang's title is listed as "non-government."[1] Further, Mr. Zhang is given a distinction as "data analyst." He is not given a contractor designation or any formal employee link to CDC in their directory and, therefore, should not be considered an employee or an extension of CDC. Defendants' Opposition (Dkt. 35 at 3) claims that Mr. Zhang is a CDC Statistician and CDC contract employee, yet this is not in the Declaration of Roger Andoh. (Dkt. 31, hereinafter the "**Andoh Declaration**".) However, if this had been the case, CDC would have included this designation on their website directory. But instead, CDC is specific in stating that this individual is *not* a governmental employee.

The second prong requires that the communications be "predecisional." To meet this requirement, these records must be "prepared in order to assist an agency decision maker in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). Further, "This standard requires the agency to explain (i) "the nature of the specific deliberative process involved," (ii) "the function and significance of the documents in that process," and (iii) "the nature of the decision making authority vested in the document's author and recipient." *Brennan Ctr. for Justice at NY Univ. Sch. of Law v. Dep't of Homeland Sec.*, 331 F. Supp. 3d 74, 93-94 (S.D.N.Y. 2018). In an attempt to undermine Plaintiff's argument, Defendants point to the quote from the NCEZID/ISO expert that explains that there was no formal decision-making process involved in deciding whether to use EB data mining over PRR analysis with regard to the COVID-19 vaccines. (Dkt. 35 at 5.) If there is no decision-making as Plaintiff pointed out, then the exemption is not justified. To avoid this conclusion, Defendants venture to

---

[1] https://directory.psc.gov/hhsdir/eeKey.asp?Key=75006&Format=Table.

2

make a straightforward argument a complex one by stating that this quote referred to EB data mining and not to PRR data analysis. However, the language speaks for itself and Defendants' self-interested reading of it oversimplifies the statement which plainly concerns the decision-making process as to utilize *either* EB data mining *or* PRR data analysis; the decision was already made to exclusively utilize EB data mining. Further, Defendants fail to point out the rest of the explanation given by the NCEZID/ISO expert that further explains that CDC did not conduct a search for the responsive records to the relevant FOIA request because there was already a standard operating procedure in place – namely, there was already a decision to utilize EB data mining and not PRR analysis. (Dkt. 33 at 10.) That this decision had already been made is fatal to Defendants' claim that these communications were protected by deliberative process privilege – deliberations had clearly already taken place and final decisions had been made. Defendants claim that this conclusion is "mere speculation." (Dkt. 35 at 5.) However, if direct quotes from the Andoh Declaration are to be taken as "speculation," Defendants cannot be justified in relying on the Andoh Declaration throughout most of their Opposition. The Andoh Declaration clearly states, in quoting the NCEZID/ISO expert:

> For clarification**, no search was conducted for any communications concerning PRR analyses including communications concerning any decision to not conduct PRR analyses**. ISO Leadership explained that Empirical Bayesian (EB) data mining has been the acknowledged "gold standard" of detecting disproportionality for pharmacovigilance, which predates COVID-19. **No formal decision-making process was involved to use EB data mining for COVID-19 vaccines**. Therefore, no responsive documents exist. The use of PRR was included in the VAERS SOP to provide a quick, crude means of detecting disproportionality as desired, to corroborate EB data mining findings. PRR was never intended to serve as the primary means of detecting disproportionality in VAERS.

(Andoh Decl. ¶ 9) (emphasis added).

3

"No formal decision-making process was involved" inherently forecloses the use of an exemption that must show decision-making. Therefore, the second requirement that the redacted material be predecisional cannot be met. Because this requirement cannot be met, Exemption 5 cannot be validly applied to these communications.

Regarding the challenges of redactions that are deliberative in nature, Defendants cherry pick the emails throughout Plaintiff's motion to decide which ones to respond to and which ones to leave out. In Plaintiff's Motion for Summary Judgment, Plaintiff challenges redactions in 21 emails that were redacted according to Exemption 5 throughout the produced documents. In Defendants' Opposition, Defendants make a specific argument for only 5 redacted emails. In light of the fact that these arguments are not brought up in Defendants' Opposition, the arguments asserted by Plaintiff are conceded. ("[P]laintiff fails to address this issue in her opposition brief and apparently concedes that she may not proceed on this claim. Accordingly, the court grants summary judgment in favor of Defendants as to this claim"); *Ankele v. Hambrick*, 286 F.Supp.2d 485, 496 (E.D. Pa. 2003). ("Plaintiff makes no response to this argument, and thus has waived his opportunity to contest it. Therefore, summary judgment is appropriate"). *Id*.

**Exemption 5 Withholdings from Emails 1, 2, 3, 4, 6, 7, 15, 16, 17, 19, 20, and 21**

Plaintiff raised challenges to all 12 of these emails in Plaintiff's original Motion for Summary Judgment regarding Exemption (b)(5) not being appropriate because they cannot be said to be (1) an inter-agency or intra-agency document; (2) "predecisional"; **and** (3) deliberative. *Tigue*, 312 F.3d at 76. Defendants failed to address any of them in their Opposition.

The redacted emails, tables, charts displaying data, and attachments are simply not inter-agency or intra-agency communications due to the previously discussed fact that Mr. Bicheng Zhang is not a CDC employee. Further, for these redactions to properly fall under this exemption,

the discussions must be "prepared in order to assist an agency decision maker in arriving at his decision." *Renegotiation Bd.*, 421 U.S. at 184. Documents are deemed to be deliberative if "they were prepared to help the agency formulate its position." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.,* 592 U.S. 261, 141 S. Ct. 777 (2021). Throughout these emails, the discussion and redactions appear to include purely factual and numerical data, which is reported in tables and charts, which generally must be disclosed. *See Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). "Raw facts with informational value in their own rights" are not exempt from FOIA *even when* included in a draft document. *BuzzFeed, Inc. v. DOJ*, 419 F. Supp. 3d 69, 78 (D.D.C. 2019); *accord Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 174 (D.D.C. 2017). Therefore, ultimately, the information largely redacted throughout these emails is not exempt from disclosure as it is not predecisional or deliberative and the conversations are not inter/intra-agency. Astonishingly, Defendants fail to even mention these 12 emails in their Opposition or provide any reason as to why these redactions are legitimate. These redactions should, therefore, be lifted and the information disclosed to Plaintiff.

**Exemption 5 Withholdings from Emails 5, 8, 13, 14, and 18**

Defendants do not address Plaintiff's argument concerning four of these five emails. Defendants discuss the exemption 5 withholdings from Email 5, but fail to explain how these redactions are properly applied to these communications. It is true that Plaintiff concedes that Agency employees were discussing data produced in the table and the analysis of that data. (Dkt. 35 at 6.) That, however, is exactly the reason that this information is not deliberative or predecisional. *See Petroleum Info. Corp.*, 976 F.2d at 1434. In support of Plaintiff's position that these communications should be disclosed, the Andoh Declaration states that these conversations

"discuss . . . how CDC subject-matter experts may generate and compare the analytic findings prior to publication. The redacted material also includes questions, comments, and proposed analysis." (Andoh Decl. ¶ 41.) Simply because analysis of this data occurs before final decisions regarding the output of this data are made does not change the fact that factual data is being discussed. The CDC employees are discussing the data produced within the withheld tables and analysis of that factual data. Again, discussions regarding public release of numerical data cannot be used as a caveat to withhold large charts of factual data and information from the public view. *Quarles v. Dep't of Navy*, 893 F.2d 390, 392, 282 U.S. App. D.C. 183 (D.C. Cir. 1990).

This point regarding the release of purely factual data and statistical analysis also applies to Emails 8, 13, 14, and 18, although Defendants do not discuss these redactions in their Opposition and so concede the inappropriateness of the redactions. According to the Andoh Declaration, these communications include "PRR outputs on a specific age group" (Andoh Decl. ¶ 47.) However, once again, purely numerical data generated by this method of research should not be withheld in its entirety. *Petroleum Info. Corp.*, 976 F.2d at 1434. Regardless, Defendants have not justified their redactions and so this information must be disclosed.

**Exemption 5 Withholdings from Email 9**

Concerning Email 9, Defendants claim, "The Andoh Declaration clearly states that "[t]he withheld material consists of internal hyperlinks that leads subject-matter experts to internal CDC shared drives.…" (Andoh Decl. ¶ 53.) However, this justification not only misses the mark, but is irrelevant regarding Plaintiff's redaction challenges. Plaintiff made clear in its original Motion that "ICAN is not challenging the internal hyperlinks, draft responses of discussions of emails or letters, suggested responses to media/requesters, or any (b)(4) or (b)(6) redactions." (Dkt. 33 at

6

13.) Defendants' red herring that Plaintiff is "pretend[ing] this justification does not exist" (Dkt. 35 at 7) fails as Plaintiff has not disputed this redaction in the first place.

Plaintiff does maintain the inapplicability of Exemption 5 to the remaining redactions throughout this email, though. Defendants fail to explain the nature of the specific deliberative process involved, the function and significance of the withheld information in that process, or the nature of the decision-making authority vested in the information's author(s) and recipient(s). *Brennan Ctr. for Justice*, 331 F. Supp. 3d at 93-94. Defendants' failure to demonstrate how the withheld information qualifies as predecisional and deliberative coupled with the factual nature of the material demands disclosure of the information.

**Exemption 5 Withholdings from Email 10, 11, and 12**

Defendants once again spill ink to wrongly assert that Plaintiff is challenging portions of the redacted materials that Plaintiff explicitly stated it was not challenging. Portions of these emails contain proposed responses to inquiries raised by reporters. As Plaintiff asserted in its motion: "ICAN is not challenging the proposed responses to the reporter that is repeated throughout these pages. However, ICAN is challenging the remaining (b)(5) redactions" (Dkt. 33 at 17.) Plaintiff will reiterate its original argument, which is that the reasoning behind the (b)(5) redactions asserted in the Andoh Declaration was circular in nature and void of the specificity required by law. The Andoh Declaration simply repeats that "the withheld material is predecisional because it predates any agency final decision… the withheld material is deliberative because it consists of pre-decisional, deliberative communications…." (Andoh Decl. ¶ 62.) This does not put Plaintiff on notice as to the nature of the communications, the deliberative or predecisional material that was being communicated, or any specific information as to why this material is lawfully redacted. Therefore, despite Defendants' wrongful assertion that Plaintiff is

7

challenging draft reporter responses, Plaintiff is simply claiming that the remainder of these emails are not predecisional or deliberative and should not be redacted under Exemption 5.

## II. Plaintiff's Foreseeable Harm Challenges

Defendants acknowledge in their Opposition that withholdings made under the deliberative process privilege require an agency to prove how disclosure of the material "would"—not "could"—adversely impair internal deliberations. *See Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020). Defendants further concede that "Since *Amadis*, courts have made clear that a "perfunctory state[ment] that disclosure of all the withheld information … would jeopardize the free exchange of information between senior leaders within and outside of the [agency]" will not suffice. *Rosenberg v. Dep't of Def.*, 342 F. Supp. 3d 62, 106 (D.D.C. 2018)." (Dkt. 33 at 7.) This demonstration of the law regarding an agency's burden regarding disclosure of material is precisely in line with Plaintiff's position. Problematic for Defendants is that the Andoh Declaration makes numerous perfunctory statements regarding the justification for the withholdings. For example, the Andoh Declaration states

> "The withheld material is deliberative because it consists of deliberations and preliminary thoughts of CDC employees on matters relating to the data analysis, interpretation, and to the exchange of information and ideas related to the analysis of data from the agency's internal data systems. Release would compromise the deliberative process of the agency in administrative matters as it would reveal internal deliberations and preliminary thoughts on the matter, including the exchange of ideas, language choices, and opinions offered by ISO leadership."

(Andoh Decl. ¶ 31.)

As previously stated, as it relates to the predecisional and deliberative nature of the withheld material, the Andoh Declaration states that the withheld material is deliberative simply because it consists of "deliberations" and "preliminary thoughts of CDC employees." This explanation is void of the specificity required by law.

8

Further, Defendants have simply not met the foreseeable harm requirement that "release of those materials **would** cause harm to an interest protected by that privilege." *Reporters Comm. for Freedom of the Press v. FBI,* 3 F.4th 350, 361 (D.C. Cir. 2021) (citing *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020); 5 U.S.C. § 552(a)(8)(A)(i)(I)) (emphasis added).

Defendants posit that public confusion is sufficient grounds on which to exempt material from the American public. Specifically, Defendants cite *Jud. Watch, Inc. v. Dep't of Def*., 847 F.3d 735, 739 (D.C. Cir. 2017) to claim that "[P]remature disclosure of draft policies may cause confusion over an agency's actual position." *Jud. Watch, Inc.*, 847 F.3d at 739. (Dkt. 33 at 8.) However, this case stands for the exact proposition that supports Plaintiff's position: FOIA laws favor disclosure of information to the American public. *Id.* Congress enacted FOIA to give the public "access to official information long shielded unnecessarily from public view." *Nat'l Ass'n of Crim. Def. Lawyers v. United States DOJ Exec. Office for United States Attys.*, 829 F.3d 741, 744 (D.C. Cir. 2016) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). This case stands for the interpretation of the FOIA statute that permits certain material to be exempt from public view, but only if that material specifically meets the parameters of the explicit statutory exemption. "Public confusion" is not one of the nine recognized FOIA exemptions. While it is true that *Jud. Watch, Inc.* explains that premature disclosure of draft policies may cause confusion over the agency's actual position regarding those policies, that does not apply to the redacted material throughout these documents. Most of the redacted material requested by Plaintiff is regarding factual data, charts, study results, and scientific interpretation of such results. Plaintiff is not requesting that the Agency release specific policy opinions or policy negotiations. Thus,

the release of the material would not confuse the public about the Agency's actual policy positions.

### III. Releasable Facts are Inextricably Intertwined with Privileged Material

Defendants have failed to satisfy their duty to segregate non-exempt material, and the government has the "burden of demonstrating that no reasonably segregable information exists within . . . documents withheld." *Loving v. DOD*, 550 F.3d 32, 41 (D.C. Cir. 2008). Defendants' position is that the redacted material was either "inextricably intertwined in the case of partial redactions or segregation would result in disjointed words in the case of full redacted pages." (Andoh Decl. ¶¶ 82-83.) However, Defendants cited Exemption 5 to withhold documents in their entirety on pages 25-29 of the production. Throughout those pages, there are tables and charts that likely contain purely factual information such as data and statistical results which should generally not be withheld under Exemption 5. *See Petroleum Info. Corp.*, 976 F.2d at 1434. Although Defendants refer to statements in the Andoh Declaration that this information cannot be reasonably segregated, these summary statements do not satisfy the segregation standard required. The *Vaughn* index states generally and conclusory that, "There is no reasonably segregable, non-exempt information that has been withheld." This does not explain why full pages of material that seemingly contain statistical data, tables, and charts are redacted in full. It is also unfathomable how "non-exempt information would leave only meaningless words and phrases" (Andoh Decl. ¶ 17) applies to a chart displaying numerical data. In sum, Defendants have simply not satisfied their requirement to reasonably segregate all non-exempt information throughout the produced documents.

### CONCLUSION

Because Defendants have failed to adequately justify the applicability of Exemption 5 throughout the produced documents, and because Plaintiff has proven that the three-prong

standard required to utilize Exemption 5 has not been met, Plaintiff respectfully requests that the Court deny Defendants' Motion for Summary Judgment, grant Plaintiff's Cross-Motion for Summary Judgment, and order Defendants to segregate and disclose all non-exempt portions of the responsive records.

Dated:    February 21, 2025                                SIRI & GLIMSTAD LLP

*/s/ Elizabeth A. Brehm*
Elizabeth A. Brehm, DC Bar No. NY0532
**Siri & Glimstad LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
ebrehm@sirillp.com

11